| | |
|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., | ) IN THE |
| Plaintiff, | ) |
| v. | ) CIRCUIT COURT |
| CAREFIRST, INC. | ) FOR BALTIMORE COUNTY |
| Defendant. | ) |
| | ) Civil Action No. |
| SERVE ON: | ) |
| John A. Picciotto, Esquire | ) |
| Resident Agent | ) |
| 1501 South Clinton Street | ) |
| Baltimore, Maryland  21224 | ) |

## COMPLAINT

Plaintiff, as and for its Complaint, alleges:

## PARTIES

1.      Plaintiff Feldman's Medical Center Pharmacy, Inc. ("Feldman's") is a Maryland corporation, with its principal place of business located at 11055 Little Patuxent Parkway, Columbia, Maryland 21044. Feldman's is a retail pharmacy serving the Baltimore – Washington, D.C. metropolitan area and is increasingly focused on providing specialty pharmacy products and services for the specialty disease states of hemophilia, von Willebrand disease, hepatitis, and HIV. Feldman's is a wholly-owned subsidiary of Factor Health Management, LLC.

2.      On information and belief, Defendant CareFirst, Inc. ("CareFirst") is a Maryland corporation and health insurer with its principal office located at 10455 Mill Run Circle, Owings Mills, Maryland 21117.  On information and belief CareFirst operates under a license from the Blue Cross Blue Shield Association (the "BCBS Association").

RECEIVED AND FILED

2009 JUN -1  PM 12: 08

CLERK OF THE CIRCUIT COURT
BALTIMORE COUNTY

## JURISDICTION AND VENUE

3.    Venue is proper in this County pursuant to Maryland Stat. §6-201, because Defendant resides in, and maintains its principal place of business in, Baltimore County.

## STATEMENT OF FACTS

4.    This action arises from the Plaintiff's desire to have its insurance claims paid promptly and correctly by Defendant, a health insurance company, in accordance with the applicable insurance policies issued, underwritten and/or administered by Defendant.   Plaintiff brings this action seeking damages for the unlawful and illegal acts of Defendant, which have resulted in a financial loss to Plaintiff.

5.    In an effort to resolve collection issues with Defendant early on in the Summer of 2008, Plaintiff relied in good faith on Defendant CareFirst's suggestion that Feldman's pursue a Home Infusion Therapy qualification. Feldman's did become so qualified and thereafter continued to rely on CareFirst's representation that it would be paid for the services it rendered without issue.

6.    Hemophilia is a life-threatening disease that requires those afflicted to use very expensive blood-clotting factor treatment ("factor"). Plaintiff is a nationally accredited specialty pharmacy located in Columbia, Maryland, which provides factor to patients.   Plaintiff has provided pharmacy and health management care coordination services to patients since 1986.   This action is commenced to require Defendant to honor its contractual obligations and to pay the legitimate insurance claims that are currently outstanding.

2

7.    Upon receipt of prescriptions from licensed physicians, Plaintiff verifies that the patient has in and/or out of network benefits, as applicable. Patients' status as in or out of network merely affects the attributes of the benefits the member is entitled to receive under his or her policy.

8.    Once Plaintiff receives confirmation of the patient's active status as a customer of CareFirst or one of its BCBS Association affiliates, Plaintiff dispenses specialized medications, products, and services, including factor, directly to the patients, who, relevant to the present case, are participants or beneficiaries of health plans insured, underwritten and/or administered by CareFirst for by one of the BCBS Association affiliates. Pursuant to the Participating Professional Provider Agreement between Plaintiff and Defendant (the "PPP Agreement"), after providing the Covered Services to a patient, Plaintiff submits a claim for the applicable charges to Defendant for payment. Plaintiff is only permitted to seek payment from Defendant and is not permitted to collect from Members for any Covered Services other than deductibles, coinsurance and copayments (PPP Agreement, ¶¶ 22 and 23). A copy of the PPP Agreement is attached hereto as Exhibit A.

9.    Despite Plaintiff's rendering of covered products and timely submittal of insurance claims for payment for such products, in breach of the PPP Agreement, Defendant has failed and refused to correctly and timely pay $1,588,127.77 in legitimate claims submitted by Plaintiff. A list of the outstanding and unpaid claims as of April 14, 2009 is attached hereto as Exhibit B.

10.    For each of the claims listed on Exhibit B, Plaintiff verified the patient's insurance, and the patient's benefits were cleared with the CareFirst administrator.

11.    On the basis of, and in reliance on, such verification, Plaintiff dispensed the appropriate medication to the patient.

12.    Plaintiff has complied with all of Defendant's requests regarding clarification of Plaintiff's provider status as a Durable Medical Equipment provider or a Home Infusion Therapy provider.  Yet CareFirst has still not paid any of the outstanding claims.   CareFirst has repeatedly requested that Plaintiff resubmit paperwork that Plaintiff has previously submitted, and has otherwise delayed Plaintiff's payment through bureaucratic maneuverings.

### Provider Agreement

13.    Plaintiff is party to the PPP Agreement with Defendant.

14.    Pursuant to the PPP Agreement, Plaintiff provided Covered Services to CareFirst members and submitted claims to CareFirst in accordance with all policies and procedures.  CareFirst, however, has breached the terms and conditions of the PPP Agreement by failing to timely pay Plaintiff for many of the claims properly submitted.

15.    Paragraph 20 of the PPP Agreement requires Defendant to pay Plaintiff no later than 30 days after Plaintiff submits a claim.  Specifically, paragraph 20 provides:

> We agree to pay claims for Covered Services rendered to Members
> and/or to provide notification to you and the Members of the denial
> of a claim stating the specific reasons for the denial, in a timely
> manner, as provided by Maryland Law. We retain sole authority to

4

determine what is a Covered Service and who is a Member. We agree to pay interest on the amount of an unpaid claim or any portion thereof in accordance with Maryland law.

16.     Paragraph 3 of the PPP Agreement defines "Covered Services" as "a medically necessary service or supply provided to a Member for which the Member is entitled to receive a benefit under the BCBSM Program in which he/she is enrolled."

17.     As discussed below in paragraph 22 of this Complaint, Maryland law requires payment of a claim within 30 days after receipt of such a claim for reimbursement.  This requirement is irrespective of whether the patient seeks and obtains Covered Services from an in-network or out-of-network provider.

### Plaintiff's Attempts to Resolve the Dispute with Defendant

18.     Although Plaintiff has repeatedly complained to Defendant about the delays in its claims processing throughout the relevant time period and tried to accommodate and work with Defendant in any way possible to resolve these issues, including detrimentally relying on Defendant's false and misleading representations inducing Plaintiff into a year of delay through a so-called "contracting process," Plaintiff's efforts have proved wasted and have not led to prompt and timely payment of its claims as more than $1,588,127.77 in unpaid claims remain outstanding.   Plaintiff has exhausted every avenue available to it to obtain payment from Defendant on these outstanding claims prior to instituting this suit, and any further attempts at resolving these issues short of litigation would be futile.

19.     Since at least August 2008, Plaintiff has engaged in exhaustive efforts to try and resolve the outstanding claims prior to instituting suit.  Plaintiff has, to its detriment, relied on CareFirst's false and misleading representations and produced, delivered, and complied with every request for documentation from CareFirst, and in

some cases has provided the same documentation on several different occasions to several different departments within CareFirst. Numerous telephone calls were made and emails sent to Defendant, but no progress was made on resolution of the outstanding claims, except CareFirst's continual response of more delays.

20.     Each time Plaintiff submitted the requested paperwork to CareFirst, months went by before CareFirst again requested either the same or additional documentation. In the meantime, Plaintiff's claims continue to go unpaid.

21.     To the extent Plaintiff is subject to any requirements or prerequisites to exhaust all informal and administrative remedies prior to instituting suit and such remedies have not been exhausted by Plaintiff, any further attempts would be futile. As detailed above, Plaintiff has attempted to resolve these issues with Defendant for almost one year, even relying in good faith on Defendant's representations that all of the claims would be resolved via further contracting with the Defendant when in fact no such need ever existed. Plaintiff has gone through all the proper channels at Defendant to resolve the non-payment of Plaintiff's claims, but Defendant has been largely uncooperative. As a result, Plaintiff is stuck in Defendant's bureaucracy, and has been passed among various CareFirst departments, with no department taking responsibility for resolving the issues with Plaintiff. Defendant has refused to resolve these issues with Plaintiff, and has exhibited a long pattern of abuse and denial, making further pursuit of reimbursement under the claims process futile. Plaintiff can no longer withstand the financial impact of waiting for payment for the life saving medication it has dispensed to Defendant's members.

6

**Relevant Statutes**

22.     Section 15-1005 of Insurance Article of the Annotated Code of

Maryland requires a health insurer to promptly pay, deny or dispute a claim for benefits

that is accompanied by properly completed paperwork containing all reasonably

necessary information. Specifically, Section 15-1005(c) provides that:

> (c)  Within 30 days after receipt of a claim for reimbursement from a person entitled to reimbursement under § 15-701(a) of this title or from a hospital or related institution, as those terms are defined in § 19-301 of the Health--General Article, an insurer, nonprofit health service plan, or health maintenance organization shall:
>
> (1)  mail or otherwise transmit payment for the claim in accordance with this section; or
>
> (2)  send a notice of receipt and status of the claim that states:
>
> > (i)  that the insurer, nonprofit health service plan, or health maintenance organization refuses to reimburse all or part of the claim and the reason for the refusal;
> >
> > (ii)  that, in accordance with § 15-1003(d)(1)(ii) of this subtitle, the legitimacy of the claim or the appropriate amount of reimbursement is in dispute and additional information is necessary to determine if all or part of the claim will be reimbursed and what specific additional information is necessary; or
> >
> > (iii)  that the claim is not clean and the specific additional information necessary for the claim to be considered a clean claim.

23.     Pursuant to Section 15-1005(f), an insurer that does not comply

with the provisions of § 15-1005(c) is required to pay interest on claims that are

outstanding for more than 30 days. Specifically, Section 15-1005(f) provides:

> (f)(1)  If an insurer, nonprofit health service plan, or health maintenance organization fails to comply with subsection (c) of this section, the insurer, nonprofit health service plan, or health maintenance organization shall pay interest on the amount of the claim that

7

remains unpaid 30 days after the claim is received at the monthly rate of:

(i) 1.5% from the 31st day through the 60th day;

(ii) 2% from the 61st day through the 120th day; and

(iii) 2.5% after the 120th day.

24.    Pursuant to Section 15-1009, if an insurance company has preauthorized or approved of a certain health care service, the insurer cannot thereafter deny payment for such service, except under extenuating circumstances. Specifically, Section 15-1009(b) provides:

(b)    If a health care service for a patient has been preauthorized or approved by a carrier or the carrier's private review agent, the carrier may not deny reimbursement to a health care provider for the preauthorized or approved service delivered to that patient unless:

(1) the information submitted to the carrier regarding the service to be delivered to the patient was fraudulent or intentionally misrepresentative;

(2) critical information requested by the carrier regarding the service to be delivered to the patient was omitted such that the carrier's determination would have been different had it known the critical information;

(3) a planned course of treatment for the patient that was approved by the carrier was not substantially followed by the health care provider; or

(4) on the date the preauthorized or approved service was delivered:

(i)    the patient was not covered by the carrier;

(ii)   the carrier maintained an automated eligibility verification system that was available to the contracting provider by telephone or via the Internet; and

(iii)  according to the verification system, the patient was not covered by the carrier.

8

## Feldman's Has Suffered Irreparable Injury

25.     By reason of Defendant's actions described above, Plaintiff has suffered injury to its reputation and its ability to obtain credit, and will suffer actual and impending irreparable injury, namely, the potential insolvency of Plaintiff.

26.     Plaintiff is without adequate or speedy remedy at law for the above-mentioned conduct of Defendant.

27.     As such, Plaintiff is entitled to (i) an injunction ordering Defendant to immediately pay all outstanding and unpaid claims and (ii) an injunction ordering Defendant to comply with the PPP Agreement, including the provisions requiring prompt and full payment of all claims for past and future Covered Services, in each case in order to enable Plaintiff to make payments to its creditors and continue providing lifesaving medication to its patients pending trial on the merits.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract)

28.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint.

29.     Plaintiff has duly satisfied all of its obligations and requirements set forth in the PPP Agreement.  Plaintiff properly provided Covered Services to patients pursuant to the PPP Agreement and is entitled to be paid thereunder; in the alternative, Plaintiff is entitled to be reimbursed as an out-of-network provider for the Covered Services it provided to CareFirst's insureds.

30.     In accordance with the express terms and conditions of the PPP Agreement, Defendant became obligated to pay to Feldman's $1,588,127.77.

9

31.    Despite such amounts being due and owing, Defendant has failed to remit payment to Plaintiff.

32.    Defendant's failure to make payment for the claims submitted by Plaintiff constitutes a material breach of the PPP Agreement.

33.    By reason of the foregoing, Plaintiff has been damaged, will continue to be damaged and is entitled to actual, consequential, and punitive damages in an amount of no less than $1,588,127.77, plus interest.

### COUNT II
### (Unjust Enrichment)

34.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 33 of this Complaint.

35.    By providing lifesaving medication to Defendant's insureds, Plaintiff has provided a benefit to Defendant.  Plaintiff properly provided Covered Services to patients pursuant to the PPP Agreement and is entitled to be paid thereunder; in the alternative, Plaintiff is entitled to be reimbursed as an out-of-network provider for the Covered Services it provided to CareFirst's insureds.

36.    Defendant was aware of this benefit, solicited it, and accepted it.

37.    Defendant, however, retains a portion of the benefit by improperly denying, diminishing, and delaying payment for Plaintiff's products and services as set forth above.

38.    It would be inequitable to allow Defendant to retain the benefit under the circumstances, and Defendant has been unjustly enriched thereby and continues to unjustly enrich itself.

10

39.    Defendant has been unjustly enriched in an amount equal to $1,588,127.77.

40.    By reason of the foregoing, Plaintiff has been damaged, will continue to be damaged and is entitled to actual, consequential, and punitive damages in an amount of no less than $1,588,127.77, plus interest.

### COUNT III
### (Bad Faith)

41.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through 40 of this Complaint.

42.    Defendant's failure to comply with its duties and obligations and pay the claims outstanding is arbitrary, capricious, and/or made with willful or wanton disregard of the rights of Plaintiff. Defendant has articulated no basis in fact or law for its refusal to pay.

43.    As a direct and proximate result of Defendant's bad faith conduct, Plaintiff has been damaged, will continue to be damaged and is entitled to actual and consequential damages in an amount of no less than $1,588,127.77, plus attorneys' fees, interest, and costs and punitive damages in an amount to be proved at trial..

WHEREFORE Plaintiff respectfully requests that judgment be entered in its favor and against Defendant as follows:

A.    On the First Cause of Action, actual damages in an amount to be determined at trial, but in no event less than $1,588,127.77, plus interest.

B.    On the Second Cause of Action, actual damages in an amount to be determined at trial, but in no event less than $1,588,127.77, plus interest.

C.   On the Third Cause of Action, actual damages in an amount to be determined at trial, but in no event less than $1,588,127.77, plus interest and costs and punitive damages in an amount to be proved at trial.

D.   Awarding Plaintiff a preliminary and permanent injunction (i) ordering Defendant to immediately pay all outstanding and unpaid claims and (ii) ordering Defendant to comply with the PPP Agreement including the provisions requiring prompt and full payment of all claims for past and future Covered Services, in each case in order to enable Plaintiff to make payments to its creditors and continue its operations pending trial on the merits.

E.   Awarding Plaintiff its reasonable attorneys' fees and the costs of this proceeding;

F.   Awarding Plaintiff interest on the outstanding claims computed pursuant to § 15-1005(f)(1) of the Maryland Code;

G.   Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:  June 1, 2009

BAROODY & O'TOOLE

By: _Neal C. Baroody_

Neal C. Baroody
201 N. Charles Street, Suite 2102
Baltimore, MD 21201
(410) 539-8412 (telephone)
(410) 539-8411 facsimile)
nbaroody@aol.com

Counsel seeking to appear *pro hac vice*
PADUANO & WEINTRAUB LLP
Anthony Paduano
Jordan D. Becker
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jdb@pwlawyers.com

Attorneys for Plaintiff

12