| | |
|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., | IN THE |
| Plaintiff, | CIRCUIT COURT |
| | FOR |
| v. | BALTIMORE COUNTY |
| CAREFIRST, INC., | Case No. 03-C-09-006257 |
| Defendant. | |

## CAREFIRST'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, REQUEST TO SCHEDULE A HEARING FOR A PRELIMINARY INJUNCTION, AND AN ORDER PERMITTING EXPEDITED DISCOVERY

Defendant CareFirst, Inc. ("CareFirst") respectfully files this Response to Plaintiff's Motion for Preliminary Injunction, Request to Schedule a Hearing for Preliminary Injunction, and an Order Permitting Expedited Discovery ("Motion").[1]

## BACKGROUND

Plaintiff tries to paint a picture of itself as a Mom and Pop "specialty pharmacy" which has been operating "since 1986" (Plaintiff's Memorandum of Law in Support of Motion at 2) ("Mem."), and which was built on the backs of "its employees [who] put years of hard work into building their business." *Id.* at 9. Those employees, the yarn goes, will see "their hard work snatched from them" (*id.*) if the Court does not grant the highly unusual step of ordering CareFirst to pay damages for an alleged (and as of yet unproven) breach of contract because Feldman's "may possibly be forced into

---

[1] The Honorable H. Patrick Stringer *sua sponte* denied Plaintiff's request for expedited discovery in an Order dated June 1, 2009.

bankruptcy." *Id.* at 2. The reality is something far different. If the Court does not outright deny Plaintiff's Motion, the evidence at the hearing will show the following[2]:

The real party driving the instant action is Factor Health Management, LLC ("Factor Health").[3] Factor Health is a foreign corporation which purchased Feldman's Pharmacy ("Feldman's") in 2007. *See* Factor Health's website available at http://www.factorhealth.com/news/news_10242007.cfm. Prior to the purchase, Feldman's was in fact a "Mom and Pop" Maryland business, established in 1974. After the sale to Factor Health, Feldman's became a shell of its former self. CareFirst believes that the evidence will show that all or almost all of the employees who were employed by Feldman's prior to the Factor Health purchase have left.

But Factor Health did not just change Feldman's personnel – it also launched Feldman's into the business of supplying Factor VIII to hemophiliacs. Factor VIII is a very expensive blood clotting pharmaceutical. It is also a pharmaceutical which is subject to abuse because it has a lengthy shelf life and a hemophiliac's need for Factor VIII can vary. Consequently, the distribution of Factor VIII presents opportunities for diversion and other forms of abuse. In fact, Federal and state authorities are currently investigating Factor Health's practices related to Factor VIII distribution.

Prior to being purchased by Factor Health, Feldman's contracted with CareFirst to provide durable medical equipment ("DME") (*i.e.,* items such as wheelchairs) to

---

[2] *See* § I, *infra.*
[3] That is why the only affidavit submitted in support of the Motion is one from Jarrett Bostwick, Factor Health's president.

2

CareFirst members. The contract attached to the Complaint is the DME contract. Factor VIII, however, is far different from durable medical equipment.

Hemophiliacs typically infuse themselves with Factor VIII at home. Therefore, Maryland requires that any entity that provides Factor VIII and associated infusion equipment be licensed as a Residential Services Agency ("RSA"). *See* Health – General Art. § 19-4A-01 *et seq.* and COMAR §§ 10.07.05.04 and 10.07.05.05. Feldman's was not a licensed RSA until *after* it shipped the Factor VIII for which it now seeks payment. Moreover, Feldman's never entered into a provider contract with CareFirst for Factor VIII.

For months, Feldman's tried to submit its claims for Factor VIII under its DME contract and for months CareFirst denied those claims. The failure of Feldman's to obtain the proper license was the primary reason that it did not receive payment. CareFirst informed Feldman's of this very problem. In the final analysis, Feldman's caused its own problems by failing to obtain the proper licensure before providing Factor VIII and associated equipment to patients' homes.

## ARGUMENT

### I. PRIOR TO GRANTING A PRELIMINARY INJUNCTION, THE COURT MUST HOLD AN EVIDENTIARY HEARING

A preliminary injunction can only issue "after opportunity for a full adversary hearing on the propriety of its issuance...." Maryland Rule 15-501. At that hearing, Plaintiff will have the burden to prove all of the elements required for issuance of the

injunction. *Eastside Vend Distributors, Inc. v. Pepsi Bottling Grp*, 396 Md. 219, 241 (2006).

## II. THE EVIDENCE WILL SHOW THAT THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION.

In general, CareFirst agrees with the standard for issuing a preliminary injunction spelled out by Plaintiff. *See* Mem. at 7-8. For the following reasons, however, CareFirst believes that the Court will deny Plaintiff's request for a preliminary injunction.

### A. Plaintiff Actually Seeks to Alter, Not Preserve, the Status Quo Ante

Before issuing a preliminary injunction, the Court "must first establish what the status quo was in this case," because such relief can only be issued when it is needed to preserve that status. *Eastside Vend Distributors* at 246. The Court of Appeals has defined the status quo as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.* From the inception, Feldman's shipments of Factor VIII have been contested because it was making those shipments without the proper RSA license. A preliminary injunction in this case would not restore the "last, *actual*, peaceable non-contested status", but rather create the status that Feldman's wishes existed prior to the controversy. That relief is properly the subject of the Complaint and resulting litigation on the merits. For this reason alone, the Court should deny the Motion.

4

## B. The Preliminary Injunction Is Not Aimed at Future Acts and Addresses Past Wrongs

The Court of Appeals has emphasized that a preliminary injunction should not provide relief for allegedly wrongful conduct that has already taken place. *Eastside Vend Distributors* at 243; *El Bey v. Moorish Science Temple of Amer., Inc.*, 362 Md. 339, 353 (2001). Here, Plaintiff complains only of non-payment of historical claims. *See* Ex. B to Compl. Once again, that is the very thing that is properly addressed in the course of litigating Plaintiff's main cause of action. As "no less venerable an authority than Judge Learned Hand [] opined []:

> Under the guise of a mandatory injunction I do not see how I can give final relief in advance of answer and trial [in a case for conversion of money]. It is, of course, true that equity will at times affirmatively restore the status quo ante pending the suit. But never, so far as I know, will it take jurisdiction over a legal claim merely to hurry it along by granting final relief at the outset of the cause."

*Dover Steel Co., Inc. v. Hartford Accident and Indem. Co.*, 806 F.Supp. 63, 67 (E.D. Penn. 1992).

## C. Plaintiff Will Be Unable to Show that It Has Any Realistic Chance of Succeeding on the Merits

Plaintiff argues that under the *Eastside Vend Distributors* holding, Plaintiff's burden of establishing a likelihood of success on the merits is tempered given that it supposedly will face some type of undefined bankruptcy if injunctive relief is not granted. Mem. at 8-9. CareFirst disagrees with Plaintiff's reading of *Eastside Vend*

5

*Distributors.*  Even assuming *arguendo* that Plaintiff is correct, it will still be unable to establish that it has raised serious and substantial issues that need to be tried on their merits.  Again, the facts at the hearing will establish that Plaintiff attempted to supply Factor VIII to insureds under a DME contract with CareFirst and that the DME contract did not cover dispensing Factor VIII.  Moreover, for many months Plaintiff shipped Factor VIII to patients' homes in violation of Maryland law because Plaintiff was not a licensed RSA.

### D. Plaintiff's Proof of Irreparable Harm Falls Woefully Short of What Is Required to Support a Preliminary Injunction

Of course, before Plaintiff even gets to take advantage of any supposed alternative burden to show likelihood of success on the merits, Plaintiff will need to show that it is going to suffer some irreparable harm.  For this proposition, Plaintiff relies strictly on its claim that it "may eventually file for bankruptcy protection" if it is not granted injunctive relief.  Mem. at 9.  It is impossible for CareFirst to know what evidence Plaintiff will offer in support of this assertion.  CareFirst can only note that Plaintiff's sole support for that dire prediction is the following statements by Factor Health's president: "Feldman's will possibly go out of business" and "Feldman's may possibly go out of business."  Bostwick Affid. ¶¶ 7, 10.  That type of equivocal, unsupported statement falls far short of the specific, detailed information that must be provided in order for the possibility of bankruptcy to support the extraordinary relief of a preliminary injunction.  *See Dover Steel*, 806 F.Supp. at 66 (holding that trial court properly denied injunctive relief where evidence of impending bankruptcy consisted of

6

"vague, general testimony relating to [Plaintiff's] current financial condition"); *see also Bondex Int'l, Inc. v. Hartford Accident And Indem. Co.*, No. 1:03-CV-01322, 2006 WL 2057349 at *1 (N.D. Ohio, Jul. 21, 2006) (holding that anything short of imminent bankruptcy will not suffice to satisfy irreparable harm prong of preliminary injunction analysis.)

## CONCLUSION

For the foregoing reasons, CareFirst respectfully submits that Plaintiff is not entitled to a preliminary injunction in this matter.

Respectfully submitted,

Patrick P. de Gravelles
A. Dean Stocksdale
CareFirst BlueCross BlueShield
Litigation General Counsel
1501 S. Clinton Street
Baltimore, Maryland 21224
202-680-7457 (voice) (Mr. de Gravelles)
202-680-7620 (fax) (Mr. de Gravelles)
410-528-7923 (voice) (Mr. Stocksdale)
410-720-5847 (fax) (Mr. Stocksdale)

*Attorneys for Defendant CareFirst, Inc.*

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July, 2009, a copy of the foregoing Response to Plaintiff's Motion for Preliminary Injunction, Request to Schedule a Hearing for Preliminary Injunction, and an Order Permitting Expedited Discovery was mailed, first-class postage prepaid, to: Neal C. Baroody, 201 N. Charles St., Suite 2102,, Baltimore, MD 21201.


_Patrick P. de Gravelles_
Patrick P. de Gravelles