| | |
|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC.,<br>Plaintiff, | IN THE<br><br>CIRCUIT COURT |
| v. | FOR |
| CAREFIRST, INC.<br>Defendant. | BALTIMORE COUNTY<br><br>Case No. 03-C-09-6257 |

### PLAINTIFF'S REPLY TO CAREFIRST'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, REQUEST TO SCHEDULE A HEARING FOR PRELIMINARY INJUNCTION, AND AN ORDER PERMITTING EXPEDITED DISCOVERY

Plaintiff Feldman's Medical Center Pharmacy, Inc. ("Plaintiff" or "Feldman's") respectfully files this Reply to Defendant CareFirst, Inc.'s ("Defendant" or "CareFirst") Response to Plaintiff's Motion for Preliminary Injunction, Request to Schedule a Hearing for Preliminary Injunction, and an Order Permitting Expedited Discovery ("Def. Response"). Plaintiff relies on the Affidavit of William Jamison, sworn to on August 5, 2009, attached hereto as Exhibit A.

### Preliminary Statement

Defendant has resorted to obfuscation and sleight-of-hand to convince the Court that Feldman's motion for a preliminary injunction should be denied. It makes no difference to the outcome of the case whether or not "the real party driving the instant action is Factor Health Management, LLC ("Factor Health")" (Def. Response at 2) or whether there is a corporate relationship between Feldman's and Factor Health. The fact of the matter is that Feldman's and CareFirst had a contractual agreement pursuant to which CareFirst was obligated to make payment to Feldman's for products and services provided to CareFirst's members, and CareFirst has failed to live up to its contractual responsibilities, bringing Feldman's (and Factor Health) to the brink of bankruptcy. Under Maryland law, Feldman's is entitled to payment and it is within

the Court's discretion to grant Feldman's a preliminary injunction to preserve the status quo pending trial.

It is telling that CareFirst focused in its Response on the issue of how Factor Health's acquisition of Feldman's "launched Feldman's into the business of supplying Factor VIII . . . a very expensive blood clotting pharmaceutical" to hemophiliacs (Def. Response at 2), because it is Feldman's belief that the expense of the blood clotting medication is behind CareFirst's refusal to pay Feldman's claims and also is the primary driver behind the purported "investigation" by "Federal and state authorities."[1]

In fact, there is absolutely no evidence that Feldman's, Factor Health, the patients who received Factor VIII from Feldman's, or any entity related to any of the foregoing, ever diverted any of the medication, or "abused" it in any way. Defendant's conclusory statements about Factor VIII being "subject to abuse" (Def. Response at 2) are merely conjecture by Defendant and have no basis in reality (see Jamison Aff. ¶ 4). The reality is that patients receiving blood factor need such factor in order to live. Without the medication, even a minor injury would lead to certain death. These same patients are also subject to lifetime caps on reimbursement of their medical expenses. The patients would never "divert" or otherwise "abuse" their prescriptions because to do so would put their lives at risk by hastening the reaching of their caps on reimbursement (Jamison Aff. ¶ 5).

## Background Facts

This action arises because Defendant has failed to pay Feldman's for claims submitted for Covered Services performed pursuant to written contracts between Feldman's and

---

[1] It is also worth noting that the health care reform legislation currently being discussed in Congress contains provisions that would eliminate lifetime or annual limits on the dollar value of benefits for any patient. The imminent removal of such limits clearly provides an incentive for insurers to purge their rolls of patients whose care currently approaches those limits, in advance of such legislation becoming law.

Defendant. Plaintiff brings this action for injunctive relief seeking an order requiring Defendant to promptly pay Feldman's for such unpaid claims.

Feldman's, a pharmacy in Columbia, Maryland, provides a very expensive blood clotting factor treatment ("factor") to suffering patients throughout the country. Hemophilia and other blood clotting disorders are life threatening diseases which require this very costly factor treatment.[2] In August 1997 Feldman's and Defendant entered into the Participating Professional Provider Agreement (the "PPP Agreement") (a copy of which is attached to the Complaint as Exhibit A).

Feldman's and CareFirst had a series of conversations regarding Feldman's status as a durable medical equipment ("DME") provider or a home infusion therapy ("HIT") provider. In those conversations, CareFirst represented to Feldman's that Feldman's should fix any licensing issues holding it back from attaining HIT status, and that CareFirst would reimburse Feldman's for outstanding claims as if Feldman's had been a HIT provider all along.

Feldman's dispenses specialized medications and services, including factor, directly to patients upon receipt of physician prescriptions. Many of such patients are participants or beneficiaries of health plans insured or administered by Defendant. Pursuant to the PPP Agreement, after providing covered services to a patient, Feldman's submits a claim for payment which is required to be paid within 30 days. Despite Feldman's rendering of Covered Services and timely submission of claims for payment, in breach of the PPP Agreement, Defendant has failed and refused to correctly and timely pay $1,588,127.77 in legitimate claims

---

[2] Prior to the development of the expensive synthetic factor at issue in this case, hemophiliacs relied upon actual blood and plasma products for their treatment. With the explosion of the HIV virus in the 1980s and 1990s, hemophiliacs were infected with HIV at astronomical rates as a result of their exposure to blood and plasma products. Out of approximately 22,000 people in the United States suffering from hemophilia at the time, approximately 10,000 contracted HIV. Such enormous rates of infection directly led to the development of the synthetic factor products at issue here, which CareFirst – and many other insurance companies – are attempting to avoid covering. See Jamison Aff. ¶¶ 9, 10.

submitted by Feldman's as of April 14, 2009. Without reason or justification Defendant has failed to pay these claims. Accordingly, Defendant is indebted to Feldman's in the amount of $1,588,127.77, plus interest as determined pursuant to Section 15-1005(f) of the Maryland Code.

As a result of Defendant's failure to pay Feldman's, Feldman's has suffered serious injury to its financial standing, its reputation, and its ability to obtain credit. If these outstanding claims are not paid immediately, Feldman's may be forced into bankruptcy.

## ARGUMENT

**A.**     **The Court Has the Discretion to Set the Status Quo of the Case**

CareFirst's assertion that "[t]he Court of Appeals has defined the status quo as 'the last, actual, peaceable, non-contested status which preceded the pending controversy'" (Def. Response at 4) is categorically untrue. What the Court of Appeals actually said in Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc., 396 Md. 219 (2006) is that "[o]rdinarily, the status quo is the last, actual, peaceable, non-contested status which preceded the pending controversy" Id. at 246 (emphasis added).

The case presently before the Court is, however, anything but ordinary. As discussed above and previously, this case is about a specialty pharmacy serving hemophiliacs that is being denied reimbursement by an insurance company that does not want to pay for the expensive treatments its hemophiliac patients require in order to stay alive. Defendant's intransigence has directly led to the financial difficulties of Feldman's. If Feldman's is not paid for the services it provided to CareFirst's patients, it will likely go out of business. Because hemophiliacs (contrary to Defendant's assertions) are not able to stockpile their medications, they often need access to additional factor on – literally – hours notice (Jamison Aff. ¶¶ 5, 6 and 7). One of the reasons hemophiliacs and their families choose Feldman's as their pharmacy is

4

that Feldman's focuses on exceptional customer service and rapid response for its patients suffering from hemophilia. Should Feldman's go out of business, or stop providing factor to hemophiliacs, these patients would have to scramble to find a new pharmacy to keep them alive. Given the level of service required to meet these patients' needs, requiring them to change pharmacies could literally put their lives at risk. If any situation called for a deviation from the "ordinary," this is such a situation, and the Court should define the status quo in this case as the survival of Feldman's pending a trial on the merits.

"It is well established that the granting or denial of an interlocutory injunction is a matter resting in the sound discretion of the court." Eastside Vend Distributors, Inc. v. Pepsi Bottling Group, Inc., 396 Md. at 240. Plaintiff implores the Court to exercise its discretion to grant Plaintiff's requested preliminary injunction to allow Feldman's to survive pending the outcome of a trial on the merits.

**B.**       **Feldman's Is Entitled to Injunctive Relief Pending the Outcome of the Trial**

Feldman's is entitled to a preliminary injunction, even though such an injunction would require CareFirst to pay money to Feldman's prior to the outcome of a full trial on the merits.

The quote[3] provided by Defendant from "venerable authority" Learned Hand does not settle the issue of whether money damages can be recovered as preliminary equitable relief. In Dover Steel Co., Inc. v. Hartford Acc. and Indem. Co., 806 F.Supp. 63 (E.D.Pa., 1992), after the passage cited by Defendant (Def. Response at 5), the court went on to say that "[t]he [*Arthur*

---

[3] "Under the guise of a mandatory injunction I do not see how I can give final relief in advance of answer and trial [in a case for conversion of money]. It is, of course, true that equity will at times affirmatively restore the status quo ante pending the suit. But never, so far as I know, will it take jurisdiction over a legal claim merely to hurry it along by granting final relief at the outset of the cause." Dover Steel Co., Inc. v. Hartford Acc. and Indem. Co., 806 F.Supp. 63, 67 (E.D.Pa. 1992). It should also be noted that Judge Hand, who died in 1961, did not issue this quote in the Dover Steel case in 1992, but rather in a 1922 opinion in which the cause of action was for conversion of money. Sims v. Stuart, 291 F. 707, 708 (S.D.N.Y. 1922)

*Treacher's*] court specifically withheld judgment on the question of whether the rule precluding recovery of disputed money damages *pendente lite* would be rendered inapplicable if the plaintiff could actually prove an impending bankruptcy . . . [t]his Court, like the court in *Arthur Treacher's*, need not decide what effect actual bankruptcy would have on the rule against recovery of money damages as preliminary relief." Id. at 68. In other words, the court held that it is possible that an impending bankruptcy would allow an injunction for payment of money damages prior to a trial on the merits.

In fact, the United State Supreme Court and various other Federal and state courts (including the Fourth Circuit) have recognized that there are situations where injunctive relief providing money to the plaintiff prior to the end of a trial on the merits is the appropriate outcome. See Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S. Ct. 2561, 2568 (1975) (upholding preliminary injunctive relief where respondents alleged that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy); Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 694 (4th Cir. 1994) (even where a harm could be remedied by money damages at judgment, irreparable harm may still exist where the moving party's business cannot survive absent a preliminary injunction") (citing Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984) (recognizing that an award of damages at the end of trial may be inadequate where the damage award may come too late to save plaintiff's business and plaintiff may go broke in the interim)).

Given Feldman's impending bankruptcy in the event CareFirst does not make any payments to Feldman's, and the importance of Feldman's to its patients – to whom Feldman's is often the only thing standing between them and death – the Court should grant Feldman's its requested injunction pending the outcome of a trial on the merits.

## Conclusion

For the reasons stated above and in Plaintiff's Memorandum of Law in Support of its Motion for a Preliminary Injunction, Plaintiff's motion for a preliminary injunction should be granted.

Dated: August 6, 2009

>BAROODY & O'TOOLE
>
>By: /s/ Neal C. Baroody
>Neal C. Baroody
>201 N. Charles Street, Suite 2102
>Baltimore, MD 21201
>(410) 539-8412 (telephone)
>(410) 539-8411 facsimile)
>nbaroody@aol.com
>
>Counsel admitted *pro hac vice*
>PADUANO & WEINTRAUB LLP
>Anthony Paduano
>Jordan D. Becker
>1251 Avenue of the Americas, Ninth Floor
>New York, New York 10020
>(212) 785-9100 (telephone)
>(212) 785-9099 (facsimile)
>ap@pwlawyers.com
>jdb@pwlawyers.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 6, 2009, a copy of the foregoing document was mailed first class, postage prepaid, to:

>Patrick P. de Gravelles
>A. Dean Stocksdale
>CareFirst BlueCross BlueShield
>Litigation General Counsel
>1501 S. Clinton Street
>Baltimore, MD 21224

_____
Neal C. Baroody