# EXHIBIT I

| | |
|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., | IN THE |
|       Plaintiff and Counter-Defendant, | CIRCUIT COURT |
| | FOR |
| v. | BALTIMORE COUNTY |
| CAREFIRST, INC., | Case No. 03-C-09-006257 |
|       Defendant, Counter-Claimant and Third-Party Plaintiff, | |
| v. | |
| John DOE 1 [Address withheld] | |
|       Third-Party Defendant | |
| and | |
| John DOE 2 [Address withheld], | |
|       Third-Party Defendant. | |

**THIRD-PARTY COMPLAINT AND COUNTER-COMPLAINT FOR INTERPLEADER [PUBLIC VERSION]**

Pursuant to Maryland Rule 2-221, Counter-Claimant and Third-Party Plaintiff CareFirst, Inc. ("CareFirst"), hereby brings this Third-Party Complaint and Counter-Complaint for Interpleader, and in support thereof, alleges as follows:

1. This suit originated with a Complaint file by Plaintiff and Counter-Defendant Feldman's Medical Center Pharmacy, Inc. ("Feldman's") on June 1, 2009.

2. Third-Party Defendant John DOE 1 is subject to the jurisdiction of this Court because he resides in Maryland.[1]

3. Third-Party Defendant John DOE 2 resides in the District of Columbia. This Court has jurisdiction over John DOE 2 for purposes of the Third-Party Complaint because John DOE 2 obtained certain goods which are the subject matter of this lawsuit in Maryland.

4. The gravamen of the Feldman's Complaint is that it had a Participating Professional Provider Agreement (referred to as a "PPP" in the Complaint) under which Feldman's allegedly is due $1,588,127.77 from CareFirst. *See* Compl., ¶¶ 8, 9.

5. The unpaid amount allegedly stems from Feldman's provision of factor, a blood-clotting substance used by hemophiliacs, to individuals insured by CareFirst. *See id.*, ¶¶ 6-9.

---

[1] CareFirst is concurrently filing a motion for an Order granting CareFirst leave to file a version of this Third-Party Complaint and Counter-Complaint for Interpleader under seal. That version contains the names and addresses of John DOES 1 and 2. That information has been withheld from this public version in order to protect the confidential health information of those individuals.

6. Despite its assertions that it is an "accredited specialty pharmacy", (*see id.*, ¶ 6), prior to December 11, 2008, Feldman's was not licensed to provide factor to patients homes because before that date, Feldman's lacked a Residential Service Agency license ("RSA"), as required by §§ 19-4A-01 *et seq.* of the Health-General Article.

7. On December 11, 2008, Feldman's was issued its RSA.

8. Even after it received its RSA, however, Feldman's never entered into a contract with CareFirst that covered factor products.

9. The contracts issued by CareFirst that cover providers who send factor products to insureds' homes are referred to as Home Infusion Therapy contracts, or "HIT contracts."

10. The PPP Agreement referred to in the Complaint did not cover factor products. Instead, it covered only durable medical equipment ("DME"). The definition of DME in the industry excludes items such as factor products which are used up. DME by definition is reusable, and includes items such as wheelchairs or prostheses.

11. Because it had a DME contract, but not a HIT contract, Feldman's was a participating provider for purposes of DME, but a non-participating provider for factor products.

12. The term "participating provider" refers to a provider who has entered into a contract with CareFirst.

3

13. Among other things, a participating provider contract provides that CareFirst pays the participating provider directly for services rendered to CareFirst's insureds.

14. In contrast, CareFirst typically does not pay a non-participating provider for services rendered to CareFirst's insureds. Rather, CareFirst pays the member. It is up to the non-participating provider to seek payment from the insured who received services.

15. It is not unusual for a provider to be participating with regard to some types of services, but non-participating with regard to others. The critical question is whether the provider has a contract with CareFirst that covers the specific type of service or product at issue.

16. Although CareFirst and Feldman's had communications with regard to Feldman's desire to enter into a HIT contract, the parties never entered into any such agreement.

17. In fact, Feldman's never complied with CareFirst's requirements for contracted HIT providers. In particular, CareFirst informed Feldman's and/or Feldman's parent company that in order to become a contracted HIT provider, Feldman's needed to establish what is known as a "segregated fund" for payment of its contracted nurses. (FSA licensees are required to have nursing services available. Providers who do not have nurses on staff, such as Feldman's, typically subcontract for the required nursing services.)

18. In addition, even if Feldman's had fulfilled all of CareFirst's requirements for a HIT contract, CareFirst was under no obligation to enter into a HIT contract with Feldman's or any other provider.

19. Because Feldman's never had a HIT contract with CareFirst, it was a non-participating provider with regard to factor products.

20. Regardless of whether a provider is participating or not, CareFirst only covers services rendered by a provider who is licensed to provide the service at issue.

21. As explained above, because it lacked an RSA prior to December 11, 2008, Feldman's was not properly licensed to deliver factor products to individuals' homes prior to that date.

22. Consequently, CareFirst is under no obligation to pay anything for factor products supplied by Feldman's prior to December 11, 2008.

23. For factor products supplied after that date, CareFirst maintains that Feldman's is a non-participating provider.

24. On several occasions, CareFirst has requested records needed to process claims submitted by Feldman's for factor products supplied after December 11, 2008.

25. That request was renewed through the parties' counsel in this matter.

26. On or about October 1, 2009, CareFirst finally received documentation from Feldman's in response to the previous requests for information needed to process the post-December 11, 2008 claims.

27. Based on its review of those records, CareFirst has now processed the post-December 11, 2008 claims, and is prepared to pay certain amounts for those claims.

28. Some of the claims at issue in this lawsuit relate to factor products supplied to individuals insured by other insurance carriers in other states in which CareFirst does not operate.

29. The claims for those non-CareFirst insureds have insurance through other licensees of the BlueCross BlueShield Association ("BCBSA").

30. CareFirst and the other insurers who use the BlueCross BlueShield name are not "affiliates" as alleged by Feldman's. *See* Compl. ¶ 8.

31. With regard to those individuals insured by other BCBSA licensees, CareFirst will forward the claims information for the post-December 11, 2008 claims to the relevant insurance companies, who are then responsible for paying the claims.

32. However, two individuals who received factor products from Feldman's after December 11, 2008, are insured by CareFirst.

33. Those individuals are Third-Party Defendants John DOE 1 and John DOE 2.

34. The claims for factor products received by John DOE 1 from Feldman's after December 11, 2008 total $150,535.00.

35. The claims for factor products received by John DOE 2 from Feldman's after December 11, 2008 total $86,329.52.

36. As explained above, if Feldman's is a non-participating provider for the factor products that it provided to John DOES 1 and 2 after December 11, 2008, CareFirst will pay those amounts to each of those individuals.

37. If, on the other hand, Feldman's is a participating provider (presumably by virtue of the DME contract), then CareFirst would be obligated to pay Feldman's directly for factor products provided by Feldman's to John DOES 1 and 2 after December 11, 2008.

38. Under this set of circumstances, Feldman's has claim of entitlement that is adverse to the claims of John DOES 1 and 2 for the amounts due under the post-December 11, 2008 claims for factor products supplied to those two individuals.

39. Under Maryland Rule 2-221, CareFirst is entitled to an Order directing the distribution of the amount in dispute.

40. Concurrent with the filing of this Third-Party Complaint and Counter-Complaint for Interpleader, CareFirst has filed a Motion seeking an Order permitting CareFirst to pay the sum of $236,864.52 into the registry of the Court. That sum represents the total amount due for the factor products supplied by Feldman's to John DOES 1 and 2 after December 11, 2008.

WHEREFORE, CareFirst prays for an Order and Judgment directing the Clerk of the Court to distribute either:

1) the sum of $150,535.00 to John DOE 1 and the sum of $86,329.52 to John DOE 2; or, in the alternative,

2) the sum of $236,864.52 to Feldman's.

Respectfully submitted,

Patrick P. de Gravelles
A. Dean Stocksdale
CareFirst BlueCross BlueShield
Litigation General Counsel
1501 S. Clinton Street
Baltimore, Maryland 21224
202-680-7457 (voice) (Mr. de Gravelles)
202-680-7620 (fax) (Mr. de Gravelles)
410-528-7923 (voice) (Mr. Stocksdale)
410-720-5847 (fax) (Mr. Stocksdale)

*Attorneys for Defendant CareFirst, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of November, 2009, a copy of the foregoing Third-Party Complaint and Counter-Complaint for Interpleader [Public Version] was mailed, first-class postage prepaid, to Neal C. Baroody, Esq., Baroody & O'Toole, 201 N. Charles Street, Suite 2102, Baltimore, Maryland 21201 and Anthony Paduano, Esq., Paduano & Weintraub, 1251 Avenue of the Americas, Ninth Floor, New York, New York 10020, attorneys for Plaintiff Feldman's Medical Center Pharmacy, Inc.

_____
Patrick de Gravelles