IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC. | * | |
| | * | |
| Plaintiff and Counter-Defendant | * | |
| | * | |
| v. | * | |
| | * | |
| | * | Civil Action No.:  1:10-cv-00254-WDQ |
| | * | |
| | * | |
| | * | |
| CAREFIRST, INC. | * | |
| | * | |
| Defendant, Counter-Plaintiff and Third-Party Plaintiff | * | |
| | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * | * | * * * * * * * * * * * * * * * * |

## OPPOSITION TO MOTION FOR REMAND

*[I]n the alternative, Plaintiff is entitled to be reimbursed as an out-of-network provider for the Covered Services it provided to CareFirst's insureds.*

– Plaintiff's Complaint, Doc. 46-4 ¶¶ 29, 35[1]

> *[I]t bears emphasizing that Plaintiff is only asserting its right to payment as 'in network provider' in the present case.*
>
> – Plaintiff's Motion for Remand, Doc. 46-1 at 7-8, n.3

---

[1] Citations to the documents already in the record of this case appear as "Doc. [no.]" Whenever possible, CareFirst will use the documents attached as Exhibits to the Motion for Remand, *i.e.* Doc. 46 through Doc. 46-10. When citing to specific pages in those documents, CareFirst uses the page number applied by this Court, rather than the documents' internal page numbers.

Plaintiff's Motion for Remand ("Motion") is a highly emotional (and equally transparent) invective against insurance companies in general that seeks to parlay the current political climate against the industry into a reason to remand the case. On a substantive level, the Motion ignores or misapplies governing precedent, is internally inconsistent in that it alleges CareFirst removed the case both too early and too late, and, as demonstrated by the quoted passages above, is highly dubious given the position that Plaintiff has taken up until now. In the final analysis, the Motion fails to provide any reason to remand the case.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Only a few procedural events bear on Plaintiff's remand motion. First, on June 1, 2009, Plaintiff filed a Complaint in the Circuit Court for Baltimore County. Doc. 46-4. In Count I, Plaintiff asserts that it "properly provided Covered Services to patients pursuant to the PPP [Participating Professional Provider] Agreement and is entitled to be paid thereunder; *in the alternative, Plaintiff is entitled to be reimbursed as an out-of-network provider for the Covered Services it provided to CareFirst's insureds.*" *Id.* ¶¶ 29, 35 (emphasis added). In addition to bringing a cause of action for breach of contract, Plaintiff also seeks recovery under the extra-contractual theories of unjust enrichment and bad faith. *Id.* ¶¶ 34-43.

On September 11, 2009, Plaintiff served the following response to CareFirst's Interrogatory No. 18, which asked about all agreements, contracts and understandings between the parties: "Feldman's is entitled to provide Factor VIII therapies to Factor VIII patients *as an out-of-network provider* to the extent any such patient's health benefits provide for such coverage." Ex. 1 at 19 (emphasis added). (Exhibit 1 is a true and

correct copy of Plaintiff Feldman's Medical Center Pharmacy, Inc.'s Responses and Objections to First Set of Interrogatories.)

On December 4, 2009, CareFirst's counsel deposed Plaintiff's chief executive officer, Jarrett Bostwick. A true and correct copy of relevant portions of Mr. Bostwick's deposition testimony is attached as Exhibit 2. From that deposition, it appeared for the first time in the context of this litigation that Feldman's is apparently using the term "out-of-network provider" to mean "non-participating provider." Ex. 2 at 147, ln. 10 through 149, ln. 7. While those terms are not synonymous, they are sometimes confused by persons not intimately familiar with insurance terminology. *See* Declaration of Michelle Powell (Ex. 3) ¶¶ 5-9.

At Mr. Bostwick's deposition, the following exchange took place:

> Q. If – assume for a moment that CareFirst is correct and there is no contract that covers the provision of Factor VIII services provided by Feldman's … and [CareFirst's] only contract is with [its] members. In that scenario, how does [CareFirst's] obligation get from the members to Feldman's?
>
> …
>
> A. Taking the assumption that you, that you posed, my understanding is that if the members' benefits, whatever all of those things are in their insurance plan with CareFirst, if the members' benefits provide that, that they seek services from an out-of-network provider, if their benefits indicate that they are allowed to do that and those services will be paid for, then that's where the obligation arises, and that's assuming that the member is compliant with their agreement with CareFirst, an out-of-network provider would be entitled to payment.

Ex. 2 at 241, ln. 21 through 243, ln. 7.

Up to that point in the litigation – December 4, 2009 – Plaintiff had made it clear that it was relying in the alternative on a theory that it was entitled to payment as a non-

3

participating provider (what it called an "out-of-network provider"). Plaintiff had not, however, explained the source of its right to collect as a non-participating provider, and it had not revealed that it had received assignments of benefits from its members.

On November 25, 2009, CareFirst filed a Third Party Complaint for Interpleader. Doc. 17. In response, on January 4, 2010, Plaintiff filed among other things a motion for summary judgment and memorandum in support of the motion. Doc. 46-7. Included was an affidavit from Mr. Bostwick that disclosed for the first time that Plaintiff had received from each of its customers a "Service Agreement/Assignment of Benefit" ("Assignment"). *Id.* at 30-34. Mr. Bostwick never mentioned those Assignments in his deposition. In the memorandum in support of the motion, Plaintiff made many statements related to the assignments, including the following:

> Whether or not Feldman's is a "Participating Provider" or a "Non-Participating Provider" – one of the critical issues in the underlying suit – makes no difference in determining whether there are any adverse claims at issue in the case of the Third Party Complaint. [¶] If Feldman's is a participating provider, then even CareFirst acknowledges that "CareFirst would be obligated to pay Feldman's directly for factor product provided by Feldman's to John DOES 1 and 2 after December 11, 20008." (Third Party Compl. ¶ 37). *If Feldman's is a non-participating provider, then the Service Agreement/Assignment of Benefits and the affidavits of John DOES 1 and 2 conclusively prove that Feldman's is the party entitled to receive payment from CareFirst* for factor product provided by Feldman's to John DOES 1 and 2.

Doc. 46-7 at 7-8 (emphasis added).

Prior to receiving Plaintiff's response to the Third Party Complaint, CareFirst served a second set of interrogatories in an attempt to clarify the as-of-then unresolved question of why Plaintiff believed it was entitled to payment as a non-participating provide. A true and complete copy of Plaintiff Feldman's Medical Center Pharmacy,

4

Inc.'s Responses and Objections to Second Set of Interrogatories is attached hereto as Exhibit 4. Plaintiff responded to Interrogatory No. 21 by stating in part that "even if the Court ultimately agrees with CareFirst's reading of the PPP Agreement, Feldman's is, at a minimum, entitled to payment as a non-participating provider." Ex. 4 at 1. When asked the basis for any contention that it is entitled to receive payments as a non-participating provider, Feldman's responded to Interrogatory No. 22 in relevant part as follows:

> The bases for such entitlement are the relevant statutes and member and other contracts, as well as the Assignment of Benefits executed by each of those CareFirst members who received factor products from Feldman's. Such Assignments grant Feldman's "all rights, title and interest to reimbursement payable" to such CareFirst member, in respect of products and services provided to such member by Feldman's.

*Id.* at 2. Plaintiff identified no Maryland statute that entitles non-participating providers to payments from health insurance companies (and indeed no such statute exists). Nor did Plaintiff explain how the "member and other contracts" entitle Plaintiff to payment as a non-participating provider, leaving only the Assignments as the real basis.

On February 1, 2010, CareFirst removed the matter to this Court. On March 3, Plaintiff filed its Motion for Remand, stating, among other things, that:

- "it bears emphasizing that Plaintiff *is only asserting its right to payment as 'in network provider'* in the present case." Doc. 46-1 at 7-8, n.3 (emphasis added);
- "the Assignments are not relevant to this litigation, because Plaintiff sued Defendant for breach of contract. The Assignments grant Feldman's Pharmacy an alternative ground for payment it reserves but nonetheless has not exercised in the current lawsuit." *Id.* at 10 (emphasis in original);
- "[t]he Assignments that form the basis for the Removal Petition do not implicate ERISA because *Plaintiff has not asserted a right to payment under the Assignments* in this case." *Id.* at 11 (emphasis added);
- "the Assignments are actually immaterial to the instant suit…." *Id.* at 14;

5

- "[r]edress of Plaintiff's claims *does not implicate the Assignments whatsoever*" *id.* (emphasis added); and
- "Plaintiff has *never claimed any right of action or remedy* in this proceeding *via the Assignments*." *Id.* at 20 (emphasis added).

It is also helpful to understand something about the difference between how claims are paid based on whether an insured receives treatment from a participating or non-participating provider. An insured is free to go to a non-participating provider, but the fact that the provider has no contract with CareFirst has certain implications. Ex. 3 ¶¶ 13, 14. Assuming the insured's policy covers services rendered by non-participating providers, the insured or the provider submits a claim. Except in rare circumstances not at issue in this case, the insurance company then pays the insured – not the provider – the amount allowed by the policy for that service. *Id.* ¶ 13. If the provider happens to charge more for the service than the amount allowed under the policy, then the provider can look to the insured to cover the difference. *Id.* ¶ 14. This is known as "balance billing." *Id.* ¶ 12. Nothing obligates the insurance company to the provider in that situation.

The foregoing scenario is in stark contrast to the situation with participating providers. Insurers like CareFirst offer providers the opportunity to participate. To do that, the provider signs a contract that, among other things, obligates the provider to accept predetermined amounts for services. *Id.* ¶¶ 11-12. The contract also prohibits the provider from collecting any money from an insured other than copayments and co-insurance. In return, the provider gets certain benefits. For example, a participating provider gets paid directly from the insurance company. *Id.* In addition, because members understand that they cannot be balanced billed by participating providers, they generally tend to favor those providers. *Id.* ¶ 15. A provider may decide to participate

6

with an insurance company if the ability to collect directly from the company and the increase in patients more than offset the chance to charge higher fees and balance bill.

**ARGUMENT**

I. **PLAINTIFF RELIES ON THE ASSIGNMENTS AS A BASIS FOR RECOVERY IN THIS ACTION**

The primary thrust of Plaintiff's Motion is a simple one:  Plaintiff does not rely on the Assignments.  If, given the record above, the Court finds that Plaintiff is correct, CareFirst concedes that the Court should remand the case.  CareFirst would only ask that the Court make it clear that Plaintiff is estopped from relying on the Assignments.

It is CareFirst's position, though, that Plaintiff is, in kind words, being somewhat disingenuous in now asserting that it is only seeking reimbursement as an "in-network" or participating provider.  After all, in the Complaint and several other documents signed under oath or filed with the Court, Plaintiff asserts it is entitled to relief as an "out-of-network" or non-participating provider.  Plaintiff is equally disingenuous in now asserting that it does not rely on the Assignments when Plaintiff so clearly cited those very documents in opposing the Third Party Complaint and responding to discovery.[2]

Beyond the question of whether Plaintiff is relying on Assignments, the answer to the question at hand is relatively easy:  the Court has jurisdiction under the complete preemption doctrine of the Employee Retirement Income Security Act of 1977, 29 U.S.C.

---

[2] CareFirst recognizes that because the undersigned is a full-time employee, there is little point in seeking sanctions because CareFirst cannot point to any legal fees it incurred in opposing the Motion for Remand.  However, CareFirst respectfully suggests that if the Court reads the foregoing procedural history the same way CareFirst does, the Court may want to *sua sponte* address the issue of whether Plaintiff's Motion violates the obligation to assert only good faith arguments.

§ 1001, *et seq*. ("ERISA") over Plaintiff's claim for payment as a non-participating provider because the claim is based on the assignment of ERISA rights.[3]

> II. CLAIMS FOR ASSIGNED ERISA BENEFITS ARE COMPLETELY PREEMPTED AND GIVE RISE TO REMOVAL JURISDICTION
>
> A. The Relevant Case Law Supports Removal Jurisdiction

It is now well-established law that any claim for relief that falls within the ambit of ERISA's carefully crafted enforcement scheme is completely preempted and gives rise to federal jurisdiction. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).[4] That scheme is contained § 502(a) of ERISA, which is codified at 29 U.S.C. § 1132(a). *Id.* at 204. Under a firmly established exception to the "well-pleaded complaint rule," ERISA completely preempts a case that falls under § 502(a) even if the plaintiff pleads only state law claims. *Id.* at 207-08.

The lesson of the *Davila* opinion is quite simple: if a suit could have been brought as an ERISA claim under 29 U.S.C. § 1132(a), then it is completely preempted and creates federal question jurisdiction. *Id.* at 210. Applying that lesson to this case means that the Court only needs to answer the following question: could Plaintiff have brought those claims based on the Assignments as an ERISA claim under 29 U.S.C. § 1132(a)? The answer is a resounding "yes."

Multiple opinions from federal courts have held as much. *See*, *e.g.*, *Quality Infusion Care, Inc. v. Humana Health Plan of Tex. Inc.*, 290 Fed.Appx. 671 (5th Cir.,

---

[3] CareFirst does not assert that the Court has removal jurisdiction over Plaintiff's claims based on the PPP. Rather, the Court has pendant jurisdiction over those claims under 28 U.S.C. § 1441(c).

[4] Plaintiff does not claim (nor could it) that none of the underlying insurance contracts are part of an ERISA welfare benefit plan. Therefore, what the insureds assigned were ERISA rights.

2008); *Montefiore Med. Center v. Teamsters Local 272*, CA No. 3096(HB), 2009 WL 3787209 (S.D.N.Y. Nov. 12, 2009; *In re Managed Care Litig.*, Master File No. 00-1334-MD, 2009 WL 855967 (S.D. Fla. March 30, 2009).

Additionally, those opinions point out that if the question concerned is one of a *right* to a payment as opposed to an *amount* of payment, the issue is likely one so intertwined with interpretation of an ERISA plan that complete preemption is appropriate. *Quality Infusion Med. Center*, 290 Fed.Appx. at 680; *Montefiore Med. Center*, 2009 WL 3787209 at *6. There is little question that what is at issue here is Plaintiff's right to be paid by CareFirst, as opposed to what amount CareFirst owes.

The cases that Plaintiff cites regarding situations in which health care providers potentially have both ERISA claims and state law claims are inapposite. Doc. 19-20. CareFirst does not dispute that Plaintiff is also asserting state law claims. What CareFirst contends is that when multiple claims are asserted and one is completely preempted, the case can be removed to federal court. Indeed, if that were not the case, the pendant jurisdiction provisions of 28 U.S.C. § 1441(c) would make little sense.

Furthermore, the cases cited by Plaintiff supports CareFirst's position. The key factor in those cases is that, unlike here, the plaintiffs asserted *only* state law claims. As explained in one of those opinions: "[t]hus, so long as the provider's state law claim does not fall within § 502(a), the existence of the assignment is irrelevant to complete preemption *if the provider asserts no claim under the assignment*." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1347 (11th Cir. 2009) (emphasis added). CareFirst removed this case because Plaintiff is pleading that it is

entitled to payment as a non-participating provider, and only recently acknowledged that it does so based on the Assignments of ERISA rights.

### B. In a Related Case, Plaintiff Acknowledges a Claim Based on the Assignments is an ERISA § 502 Claim

Aside from suing CareFirst in the instant action, Plaintiff also sued CareFirst in a case styled *Templin v. Independence Blue Cross*, Civil Action No. 09-4092 (JHS), which is pending in the United States District Court for the Eastern District of Pennsylvania. A true and correct copy of the First Amended Complaint in that case (without exhibits) is attached hereto as Exhibit 5. In that case, Plaintiff, a related entity, and two insureds sued CareFirst and two other insurance companies for failing to cover the cost of Factor VIII provided by Plaintiff to the individuals. In other words, *Templin* very closely mirrors the instant case except that in *Templin* Plaintiff brought in other plaintiffs.

In its jurisdictional allegation in *Templin*, Plaintiff states that the U.S. District "Court has jurisdiction over this action because it involves a federal question under the Employee Retirement and Security Income [sic] Act of 1974 ("ERISA") …." Ex. 5 ¶ 8. And why does Plaintiff – a medical provider – assert that it has standing to bring the ERISA claim under federal jurisdiction? Because the "[i]ndividual Plaintiffs assigned their right to payment" to the pharmacies, including Plaintiff. *Id.* ¶ 17. In opposition to a motion to dismiss the *Templin* case, Plaintiff asserted that the assignments from its customers entitle Plaintiff to bring an ERISA § 502(a) action. Ex. 6 at (internal pages) 7-8. (Exhibit 6 is a true and correct copy of the Memorandum in Opposition to Defendant CareFirst, Inc.'s Motion to Dismiss the First Amended Complaint, filed in *Templin*).

So on the one hand, Plaintiff asserts in *Templin* that it can bring an action in federal court under ERISA § 502(a) because it was assigned ERISA rights from its

customers.  On the other hand, and in direct contradiction to its assertions in *Templin*, Plaintiff tells this Court that it there is no federal jurisdiction under ERISA § 502(a) even though Plaintiff clearly relies on the Assignments as one of its bases for recovery.

In its reply memorandum Plaintiff will no doubt point out that in *Templin* CareFirst argues that Plaintiff does not have standing under ERISA.  That is true but the reason is that the insurance contracts in *Templin* have anti-assignment clauses.  *See* Ex. 6 at (internal pages) 8-10.  The question of whether anti-assignment clauses will come into play in this case is not germane to the instant Motion.  As Plaintiff pointed out in *Templin*, "'a person does not lack standing to claim benefits under ERISA simply because it may turn out that he or she is not entitled to prevail and ultimately collect the benefits.'"  *Id.* at (internal page) 10 (quoting *Chiropractic Nutritional Assocs. v. Empire Blue Cross and Blue Shield*, 669 A.2d 975, 981 (Pa. Super. 1995)).

In other words, the fact that Plaintiff may not be able to recover under the Assignments (because of anti-assignment clauses) does not mean that Plaintiff's claim does not fall under ERISA § 502(a), and therefore subject to complete preemption and removal.  At most, if CareFirst proves enforceable anti-assignment clauses exist, the Court could dismiss Plaintiff's claim as a non-participating provider and remand the surviving contract claims back to state court.  But those are all issues for another day.

      C.  Plaintiff Misrepresents the Terms of the Underlying
       <u>Insurance Contracts</u>

A central question in this case is whether Plaintiff needed a Residential Service Agency license, or "RSA", to distribute Factor VIII.  *See* Doc. 46-5 at 4 ¶ 6. Plaintiff asserts that "[a] patient-insured's right to payment does not depend upon the presence or absence of a 'Residential Services Agency license.'" Doc. 46-1 at 22.  Therefore,

Plaintiff argues, the dispute here could not possibly be one that invokes ERISA.  Plaintiff has failed to read or chooses to ignore the policies that are part of the record in this case.

The policy covering John DOE 1 specifically provides that "[s]ervices are covered only if the provider" is "licensed in the jurisdiction in which services are provided…" and "to be covered, the services must be within the lawful scope of the services for which that provider is licensed."[5]  Doc. 29-2 at 31 ¶ 1.6.   Contrary to Plaintiff's position, the sources of the ERISA benefits (the insurance policies) explicitly limit coverage to services covered by a provider's license.  It is disputed whether Plaintiff needed an RSA to dispense Factor VIII.  Thus, the case clearly involves adjudication of ERISA rights.

### III. CAREFIRST TIMELY REMOVED THIS CASE

On the one hand, Plaintiff argues that CareFirst prematurely removed this case because it is only "[a]t some future unspecified date" that "Plaintiff may or may not choose to pursue" recovery based on the Assignments.  Doc. 46-1 at 21.  On the other hand, Plaintiff also argues that CareFirst is too late in removing the case.  *Id.* at 24-27.  As shown above, CareFirst clearly did not remove the case prematurely.  It also did not remove the case too late.  CareFirst removed the case within thirty days of receiving notice that Plaintiff intended to rely on the Assignments.  That comports with the time period set forth in 28 U.S.C. § 1446(b).  Indeed, it is rather odd that Plaintiff cites *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir. 1997) for this issue.   The *Lovern* decision clearly holds that a court cannot look at the "subjective knowledge of the defendant" to determine when the 30-day removal clock starts to run.  *Lovern*, 121 F.3d at 162.  The clock starts when the grounds for removal appear in the record.  *Id.*  It is

simply ridiculous for Plaintiff to assert that the 30-day removal clock started "once Defendant's Interpleader Complaint laid the first brick of ERISA's alleged foundation." Doc. 46-1 at 27.[6]

## CONCLUSION

For the foregoing reasons, Defendant CareFirst, Inc. respectfully requests that the Court deny Plaintiff's Motion for Remand.


March 17, 2010                                              Respectfully submitted,

                                                            _____/s/_____
                                                            A. Dean Stocksdale
                                                            Bar No.  28416
                                                            Associate General Counsel
                                                            Group Hospitalization and Medical Services, Inc.
                                                            1501 S. Clinton Street
                                                            Baltimore, MD 21224
                                                            (410) 605-7923
                                                            Attorney for CareFirst

---

[5] Identical language appears in the policy covering John DOE 2, but for some reason that policy (which should have been 29-3) does not appear in the Court's online records, even though it was submitted along with Docs. 29, 29-1 and 29-2.

[6] CareFirst sees little chance that the Court will reward Plaintiff with attorney's fees as requested.  *See* Doc. 46-1 at 27-29.  Therefore, CareFirst will not address that issue. Likewise, CareFirst will also avoid the temptation to point out why so many of Plaintiff's assertions of fact are incorrect.  Those misrepresentations, while obviously meant to be inflammatory, are not relevant to the Motion for Remand.  CareFirst is prepared to address whatever questions the Court has either through a supplemental submission or at a hearing on this Motion.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of March 2010, a copy of the foregoing Opposition to Motion for Remand, with attachments, was served electronically via the CM/ECF system on Neal C. Baroody, Esq., Baroody & O'Toole, 201 N. Charles Street, Suite 2102, Baltimore, Maryland 21201, attorney for Plaintiff Feldman's Medical Center Pharmacy, Inc. and Third-Party Defendants. In addition, because the memorandum plus attachments exceeds fifteen pages, it was also mailed to the Clerk of Court and copies of the cover letter to the Clerk, the memorandum, with attachments and the Notice of Electronic Filing were mailed, first-class, postage prepaid to Neal C. Baroody, Esq., Baroody & O'Toole, 201 N. Charles Street, Suite 2102, Baltimore, Maryland 21201.

/s/
A. Dean Stocksdale

1. **<u>APPENDIX OF EXHIBITS</u>**


Ex. 1 – Plaintiff Feldman's Medical Center Pharmacy, Inc.'s Responses and Objections to First Set of Interrogatories


Ex. 2 – Relevant Portions of the Transcript of the Deposition of Jarrett T. Bostwick


Ex. 3 – Declaration of Michelle Powell


Ex. 4 – Plaintiff Feldman's Medical Center Pharmacy, Inc.'s Responses and Objections to Second Set of Interrogatories


Ex. 5 – First Amended Complaint (without exhibits) filed in *Templin v. Independence Blue Cross*, Civil Action No. 09-4092 (JHS), pending in the U.S. District Court for the Eastern District of Pennsylvania


Ex. 6 – Memorandum in Opposition to Defendant CareFirst, Inc.'s Motion to Dismiss the First Amended Complaint filed in *Templin v. Independence Blue Cross*, Civil Action No. 09-4092 (JHS), pending in the U.S. District Court for the Eastern District of Pennsylvania