IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

FELDMAN'S MEDICAL CENTER
PHARMACY, INC.,

      Plaintiff,

v.

CAREFIRST, INC.

      Defendant,

v.

John DOES 1 and 2

      Third-Party-

      Defendants,

Civil Action No. WDQ-10-254

---

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR REMAND

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

Preliminary Statement ............................................................................................. 2

ARGUMENT ............................................................................................................. 7

   I. THIS COURT SHOULD REMAND THE INSTANT ACTION BECAUSE THE REMOVAL
      PETITION WAS FILED OUT OF TIME ................................................................. 7

   II. THE ASSIGNMENTS DO NOT TRIGGER ERISA'S COMPLETE PREEMPTION
      DOCTRINE BECAUSE PLAINTIFF DOES NOT ASSERT ANY RIGHT OF ACTION
      UNDER THEM IN THE INSTANT SUIT .............................................................. 10

     A.   Defendant Misconstrues ERISA's Complete Preemption Doctrine .................... 11

     B.   Defendant Mischaracterizes Plaintiff's Asserted Right to Relief ...................... 13

     C.   The Templin Case Is Inapposite to Plaintiff's Suit ......................................... 16

     D.   The Anti-Assignment Clauses Reveal Defendant's Charade ........................... 18

Conclusion ............................................................................................................. 20

i

## TABLE OF AUTHORITIES

Cases

Aetna Health Inc. v. Davila,
542 U.S. 200, 124 S. Ct. 2488 (2004)............................................................ 11, 13

Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc.,
187 F.3d 1045 (9th Cir. 1999)............................................................................... 14

Caterpillar Inc. v. Williams,
482 U.S. 386, 107 S.Ct. 2425 (1987).................................................................... 10

Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.,
591 F.3d 1337 (11th Cir. 2009) ............................................................................ 11

Franciscan Skemp Healthcare, Inc v. Central States,
538 F.3d 594 (7th Cir. 2008) ............................................................................... 11

In re Managed Care Litigation,
298 F. Supp. 1259, 1293 (S.D. Fla. 2003)....................................................... 5n, 14

Link Telecommunications, Inc. v. Sapperstein,
119 F. Supp. 2d 536 (D. Md. 2000) ........................................................................ 7

Lone Star OB/GYN Assoc. v. Aetna,
579 F.3d 525 (5th Cir. 2009) ............................................................................... 11

Long v. Bando Mfg. of America, Inc.,
201 F.3d 754 (6th Cir. 2000) ............................................................................... 16

Marin General Hospital v. Modesto & Empire Traction Company,
581 F.3d 941(9th Cir. 2009) ................................................................................ 11

McPhatter v. Sweitzer,
401 F. Supp. 2d 468 (M.D.N.C. 2005)...................................................................... 9

Medical and Chirurgical Faculty v. Aetna,
221 F. Supp. 2d 618, 620-1 (D. Md. 2002)............................................... 5n, 15, 14n

Mulcahey v. Columbia Organic Chemicals Co., Inc.,
29 F.3d 148 (4th Cir.1994) ................................................................................. 16

Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,
388 F.3d 393 (3rd Cir. 2004) ........................................................................ 11, 13

S.W.S. Erectors, Inc. v. Infax, Inc.,
72 F.3d 489 (5th Cir.1996) ................................................................................... 9

Sheridan Healthcorp., Inc v. Neighborhood Health Partnership,
459 F. Supp. 2d 1269 (S.D. Fla. 2006).................................................................. 15

Thomas v. Capital Medical Management Associates, LLC,
189 Md. App. 439 (Md. App. 2009) ....................................................................... 15

## Statutes

28 U.S.C.A § 1446........................................................................................ passim

28 U.S.C.A. §§ 1602-1611 .................................................................................. 18

29 U.S.C.A § 1002(7)-(8).............................................................................. 6, 12

U.S.C § 1332.................................................................................................... 6n

Plaintiff Feldman's Medical Center Pharmacy, Inc. ("Feldman's Pharmacy" or "Plaintiff"), by and through its undersigned counsel, respectfully submits this Reply Memorandum of Law in further support of its Motion to Remand the instant suit to the Circuit Court of Baltimore County ("State Court"), pursuant to 28 U.S.C § 1447(c). The United States District Court for the District of Maryland lacks federal subject matter jurisdiction over Plaintiff's action.

To reiterate, Plaintiff's suit, at its core, consists of a contract dispute about the scope, meaning, and application of a health care provider agreement (the "Participating Professional Provider Agreement" or the "PPP"). For this reason, Plaintiff's claims arise exclusively under state law.   Plaintiff has neither pleaded a direct ERISA claim in form nor has it alleged a derivative ERISA claim, in effect; whether via the Service Agreement/Assignment of Benefits (the "Assignments") it received from its insured or otherwise.

Furthermore, Defendant CareFirst Inc. ("Defendant" or "CareFirst") filed its Notice of Removal (the "Removal Petition") after the removal statute's 30-day time limit elapsed. See 28 U.S.C § 1446(b).   Nothing in the Defendant's Opposition to Motion for Remand (the "Defendant's Opposition Brief") cures these two fatal defects in Defendant's Removal Petition. In fact, Defendant's Opposition reaffirms the latter.

This Court should grant Plaintiff's Motion to Remand the instant suit accordingly. See 28 U.S.C § 1447(c).

### Preliminary Statement

Defendant's Opposition Brief begins with a telling irony. CareFirst describes Plaintiff's Motion for Remand as a "highly emotional (and equally transparent) invective against the insurance companies... that seeks to parlay the current [hostile] political climate against the industry." (Defendant's Opposition Brief, p. 2) Yet CareFirst's tactics in this case-- and in their behavior that precipitated it-- illustrate why the industry has reaped the animosity it has sowed. CareFirst (and its BCBSA affiliates) have resorted to one ploy after another to avoid paying Feldman's Pharmacy. The Removal Petition is only CareFirst's latest. Based on dubious jurisdictional grounds and submitted months too late, the Removal Petition suffers from fatal flaws that warrant remanding Plaintiff's suit and awarding it attorneys' fees.

To recap, Plaintiff commenced this action on June 1, 2009. CareFirst filed the Removal Petition a full eight months later-- seven months after the thirty (30) days prescribed in the removal statute expired 28 U.S.C.A § 1446(b) (the "Removal Statute"). CareFirst nonetheless invokes the Removal Statute's "other paper" exception[1]. Carefirst argues that not until December 31, 2009, did it first ascertain that Plaintiff, supposedly, was asserting an implicit ERISA claim through the right to payment Plaintiff's patients assigned it (Removal Petition, ¶¶ 6, 13; Defendant's Opposition Brief, pp. 3-6).

---

[1]    28 U.S.C.A § 1446(b) provides, in pertinent part, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant... [of] other paper from which it may first be ascertained that the case is one which is or has become removable."

However, in the Complaint, Plaintiff has not asserted any right or remedy the Assignments confer, explicitly or implicitly. In fact, Plaintiff only raised the Assignments to dispose of an illusory dispute Carefirst had manufactured between Plaintiff and two of its patients. See Carefirst's Third-Party Complaint and Counter-Complaint For Interpleader Defendant, (the "Interpleader Complaint" or "Interpleader Action;" Plaintiff's Memorandum of Law In Support of Plaintiff Counter-Defendant's Motion for Summary Judgment (the "Response to the Interpleader Complaint," Exhibits A and B)); See also Plaintiff's Motion to Remand, pp.20-23). The Assignments accordingly play no part in Plaintiff's case-in-chief and therefore do not qualify as an "other paper" from which "the case... has become removable." 28 U.S.C.A § 1446(b).

More importantly, a fundamental contradiction in CareFirst's argument negates CareFirst's reliance on the "other paper" exception. In Defendant's Opposition Brief, CareFirst asserts that

> [T]he Court has jurisdiction under the complete preemption doctrine of the Employee Retirement Security Act of 1977, 29 U.S.C. § 1001, *et. seq.* ("ERISA") over Plaintiff's claim for payment as <u>a non-participating provider because the claim is based on the assignment of ERISA rights</u>. (Defendant's Opposition Brief, p. 7)(emphasis supplied)

CareFirst, in other words, argues that Plaintiff necessarily implicates the Assignments and pleads an ERISA claim because in the Complaint, Plaintiff specifically asserts its entitlement to reimbursement as an out-of-network-provider. Even assuming <u>arguendo</u>, CareFirst's inference was valid—and as described in Section II.B., pp. 16-18, it

3

is not—a fatal corollary follows from it:  CareFirst necessarily would have first received notice of Plaintiff's putative ERISA claim on the date the Complaint was filed-- that is, on June 1, 2009.   Accordingly, CareFirst cannot now claim it "first [] ascertained that the case is one which is or has become removable" on December 31, 2009.  28 U.S.C.A § 1446(b).

Worse, CareFirst actually acknowledged it believed the Complaint to be removable as early as December 4, 2009.  In the deposition CareFirst took of Jarrett Bostwick, Plaintiff's chief executive officer, on December 4, 2009-- and excerpted in Defendant's Opposition Brief (Exhibit 2)—the following colloquy occurred.

- Mr. Bostwick: "If [Carefirst's] position is that [Feldman's Pharmacy] doesn't [sic] have an agreement, this agreement that I believe we should be paid under, then we, [Feldman's Pharmacy] should be able to bill you as an out-of-network provider

- CareFirst's General Counsel: "Are you aware that the contracts, insurance contract that CareFirst has with their members have non-assignment clauses?" (Defendant's Opposition Brief, Exhibit 2, p. 241)(emphasis added)

- CareFirst's General Counsel: "The reason I ask this is because depending on how you frame this claim has a lot to do with where this case resides" (Defendant's Opposition Brief, Exhibit 2, p. 241)(emphasis added).

In the very exhibits Carefirst appends to Defendant's Opposition Brief, CareFirst then acknowledges it "first [] ascertained" an ostensible grounds for removal well in excess of thirty (30) days before they filed their Removal Petition.

Whether or not Defendant's recognition of a basis for removal in early

4

December makes the Removal Petition timely, it does not change the Assignments' irrelevance to Plaintiff's suit.   Nor does it redeem the fallacy upon which the Removal Petition rests because federal subject matter jurisdiction rises or falls upon whether Plaintiff has asserted a claim under the Assignments.  (See Defendant's Opposition Brief, p.7)("If, given the record, the Court finds that Plaintiff is correct [that Plaintiff does not rely on the Assignments], Carefirst concedes that the Court should remand the case.")  Defendant's fallacy proceeds from the following misconception: Carefirst's only remedy as an "out-of-network provider" stems from the derivative ERISA claim arising from the Assignments.   This is not the case.   Although Plaintiff maintains its primary right to payment as "in network provider" under the PPP-- as Defendant acknowledges (Defendant's Opposition Brief, pp. 1, 5)-- Plaintiff also retains alternative legal and equitable claims under state law as an "out-of-network provider" (Complaint ¶¶ 29, 35).  And following discovery, Plaintiff reserves its right to amend the Complaint to elaborate upon them and/or to assert them explicitly.[2]

All of which serves to reinforce the central barrier depriving this Court of

---

[2]      See In re Managed Care Litigation, 298 F. Supp. 2d 259, 1292-4 (S.D. Fla. 2003)(non-contracting health providers accrue claims under constructive contract, implied-in-fact contract, and unjust enrichment); See also Medical and Chirurgical Faculty of the State of Marlyland v. Aetna U.S. Healthcare, Inc., 221 F. Supp. 2d 618, 620-1 (D. Md. 2002)(preemption of state law claims would leave non-contracting medical providers with no viable civil remedy).  Defendant's unsubstantiated assertion that "only the Assignments" entitle "Plaintiff to payment as a non-participating provider" is therefore, at worse, spurious and at best, irrelevant (Defendant's Opposition Brief, p. 5).  If Plaintiff pursues its right to relief under the Assignments, Plaintiff reserves the right to do so at a future date.

federal subject matter jurisdiction over Plaintiff's case.  ERISA, by definition, only covers health plans' "beneficiaries" and "participants", 29 U.S.C.A § 1002(7)-(8).  Feldman's Pharmacy, by contrast, is a medical provider.[3]   More relevantly, Feldman's Pharmacy has not asserted any rights its "beneficiaries" or "participants" may have assigned it in the present lawsuit.   Plaintiff's right to reimbursement for medical products and services provided to its patients—whether deemed "in-network" or "out-of-network— stems from the Participating Professional Provider Agreement (the "PPP") and related principles of law and equity.  For this reason, Plaintiff's claims for breach of contract, unjust enrichment and bad faith sound exclusively in state common and statutory law.  Conversely, Plaintiff has not pleaded an explicit or implicit ERISA claim and this Court, accordingly, lacks federal subject matter jurisdiction over Plaintiff's case.[4] All the arguments Defendant has contrived to the contrary merely aim to muddle this dispositive fact, to prolong this litigation, and to inflate Plaintiff's legal bills to a size beyond which they cannot afford to prosecute this suit.

Either of the two foregoing reasons alone warrants remand of the instant suit.  28 U.S.C § 1447(c).

---

[3]     Feldman's Pharmacy supplies, among other medication, blood factor, a very expensive blood-clotting serum hemophiliacs to stanch bleeding and to avoid bleeding to death.

[4]     Defendant does not base its Removal Petition on diversity jurisdiction, and because both parties are Maryland corporations, Defendant cannot claim federal jurisdiction on such grounds.  See 28 U.S.C § 1332(1).

ARGUMENT

I.

THIS COURT SHOULD REMAND THE INSTANT ACTION
BACItEMOVAL PETITION WAS FILED OUT OF TIME

Plaintiff commenced the instant suit on June 1, 2009.   The posture of

Plaintiff's case has not changed since then.   Plaintiff has not amended its Complaint.

Plaintiff has not augmented its three state-law causes of action.    Nor, for that matter,

has Plaintiff altered the factual and legal foundation upon which its suit rests—

Defendant's breach of the PPP.   The Complaint furnished Defendant ample notice in June

of 2009 whether ERISA preempted Plaintiff's claims and/or granted Defendant an

ostensible ground for removal.   Link Telecomms., Inc. v. Sapperstein, 119 F. Supp. 2d

536, 544 (D. Md. 2000)(most courts require a defendant to remove a case within thirty

days unless the initial pleading provides 'no clue' that the action may be removable).   The

thirty-day time period 28 U.S.C.A § 1446(b) prescribes accordingly expired long ago.   For

this reason alone, the Removal Petition is fatally defective and this Court should remand

the instant action accordingly.

Defendant contends however that it first discovered Plaintiff's action was

removable on December 31, 2009.[5]   When, according to CareFirst, Feldman's Pharmacy

"disclosed for the first time that Plaintiff had received [the Assignments] from each of its

---

[5]        Defendant's Opposition Memorandum erroneously sets the date of Plaintiff's
Response to the Interpleader Complaint as January 4, 2010. (Defendant's Opposition
Memo, p. 4)

customers." (Defendant's Opposition Memorandum, pp. 4); See also the Removal Petition, ¶ 6, 12-13; 28 U.S.C.A § 1446(b)(notice of removal may be filed within thirty days after defendant's receipt [of] "other paper" from which defendant first ascertains the case has become removable). However, Plaintiff did not raise the Assignments as a basis for recovery in this action. Plaintiff submitted the Assignments to dispose of the collateral proceeding Defendant initiated via the Interpleader Complaint. Indeed, as Plaintiff has reiterated throughout Motion to Remand, Plaintiff does not assert any right, claim, or remedy the Assignments may confer in this proceeding. As a consequence, the Assignments, by definition, cannot qualify as an "other paper" which transformed Plaintiff's bases for relief and signaled that Plaintiff's case "had become removable." See Metro Ford Truck Sales, Inc. v. Ford Motor Co., 145 F.3d 320, 326-27 (5th Cir. 1998)(collateral proceedings cannot change the character of plaintiff's complaint)[6].

Plaintiff's Response to the Interpleader Complaint, and the exhibits annexed thereto, on December 31, 2009, does not supersede the preexisting notice both the Complaint itself and a December 9, 2010 deposition provided Defendant well in advance of 30-day cutoff.

First of all, if the Court accepts CareFirst's argument that Plaintiff cannot

---

[6]    Defendant mischaracterizes Plaintiff's argument in this regard (Defendant's Opposition Brief, p. 12). Plaintiff does not argue that the Assignments' collateral relation to Plaintiff's Complaint makes the Removal Petition "premature." Id.    That the Assignments cannot serve, by definition, as an "other paper [in this] case" renders the Removal Petition invalid.

sustain a claim for "out-of-network" benefits without invoking the Assignments, thus turning this case into one under ERISA-- which Plaintiff, of course, denies-- then the Complaint itself, filed June 1, 2009, should date Defendant's notice that this "case is one which is or has become removable." 28 U.S.C.A § 1446(b).  Moreover, the deposition Carefirst took of Plaintiff's CEO, Jarrett T. Bostwick (Defendant's Opposition Memorandum, Exhibit 2) manifests Defendant's notice-- if not its actual knowledge-- of its professed grounds for removal as early as December 4, 2009. See, supra, p. 10; see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir.1996)(transcript of a deposition can be considered an "other paper" under 28 U.S.C. 1446(b) to make a case removable); McPhatter v. Sweitzer, 401 F. Supp. 2d 468, 475-7 (M.D.N.C. 2005)(defendants' removal petition is time-barred because they had substantially similar "other papers" more than thirty days before they removed).

      Carefirst's deposition questions alluding to the Assignments -- and the Interpleader Complaint before that—precede Defendant's Removal Petition, and anticipate the its principal argument, by more than thirty days. See Defendant's Opposition Brief, p.5 ("Nor did Plaintiff explain how the 'member and other contracts' entitle Plaintiff to payment as a non-participating provider, leaving only the Assignments as the real basis") In fact, CareFirst's stance above raises the inference that Defendant only initiated the Interpleader Action to insinuate the Assignments into Plaintiff's case and thereby to contrive a basis for federal jurisdiction.  This is precisely the kind of forum manipulation

9

the federal court's removal jurisprudence forbids.  See Caterpillar Inc. v. Williams, 482

U.S. 386, 399 392, 107 S.Ct. 2425, 2433(1987)(defendant cannot inject a federal

question into an action that asserts what is plainly a state-law claim and transform the

action into one arising under federal law).

II.

THE ASSIGNMENTS DO NOT TRIGGER ERISA'S COMPLETE
PREEMPTION DOCTRINE BECAUSE PLAINTIFF DOES NOT
ASSERT ANY RIGHT OF ACTION UNDER THEM IN THE INSTANT SUIT

Apart from the Removal Petition's untimeliness, a related but independent

defect vitiates it as well.  In the current action, Plaintiff has not asserted the derivative

right of action the Assignments grant Plaintiff to sue as a plan "beneficiary" or

"participant" under ERISA.   In fact, the Assignment's complete irrelevance to the

Complaint and Plaintiff's case-in-chief deprives this Court of federal subject matter

jurisdiction and warrants its remand to State Court.  CareFirst itself acknowledges that

this outcome would follow, should this Court agree.

> The primary thrust of Plaintiff's Motion [to Remand] is a simple one:
> Plaintiff does not rely on the Assignments.  If, given the record above,
> the Court finds that Plaintiff is correct, Carefirst concedes that the
> Court should remand the case. (Defendant's Opposition Brief, p. 7)

In nonetheless contesting this result, Defendant's Opposition Brief betrays

two fundamental misconceptions.  First of all, it misconstrues the test courts apply in

determining complete preemption under ERISA.  Secondly, it mischaracterizes Plaintiff's

grounds for relief.  As a result, Defendant's Opposition purports to identify a tacit ERISA

10

claim where none exists.

A.   Defendant Misconstrues ERISA's Complete Preemption Doctrine

Citing <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 124 S. Ct. 2488, 2494-5

(2004), Carefirst describes the implication of <u>Davila</u> and its progeny as follows:

> Applying [Davila's] lesson to this case means that the Court only
> needs to answer the following question: <u>could</u> Plaintiff have brought
> those claims based on the Assignments as an ERISA claim under 29
> USCA § 1132(a)? The answer is a resounding 'yes'. (Defendant's
> Opposition Brief, p. 8)(emphasis supplied); citing <u>Quality Infusion Care,
> Inc. v. Humana Health Plan</u>, 290 Fed. Appx. 671 (5th Cir 2008);
> <u>Montefiore Med. Center v. Teamsters Local 272</u>, 2009 WL 3787209
> (S.D.N.Y. 2009); <u>In re Managed Care Litig</u>, 2009 WL 855967 (S.D.
> Fla. 2009)

The confusion arises because Defendant conveniently ignores the critical

distinction between <u>Davila</u> and its progeny: <u>Connecticut State Dental Ass'n v. Anthem</u>

<u>Health Plans, Inc.</u>, 591 F.3d 1337 (11th Cir. 2009); <u>Marin General Hospital v. Modesto &</u>

<u>Empire Traction Company</u>, 581 F.3d 941(9th Cir. 2009); <u>Pascack Valley Hosp. v. Local</u>

<u>464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393, 402 (3rd Cir. 2004);

<u>Franciscan Skemp Healthcare, Inc v. Central States</u>, 538 F.3d 594 (7th Cir. 2008); <u>Lone</u>

<u>Star OB/GYN Assoc. v. Aetna</u>, 579 F.3d 525 (5th Cir. 2009).

In <u>Davila</u>, a health plan "participant" and health plan "beneficiary" directly

sued the two health care companies that administered their plans, CIGNA and Aetna,

under Texas tort law for denying the two plaintiffs health benefits and causing them

injury.  When a participant-beneficiary sues its health plan directly, the court must inquire

11

whether the patient-beneficiary "could" have brought its claim under 29 USCA § 1132(a). For ERISA specifically contemplates and exclusively covers a health plans' "beneficiaries" and "participants." See 29 U.S.C.A § 1002(7)-(8). Moreover, no other legal relationship or duty, in most instances, connects participant-beneficiaries with health care companies besides the health plan. Consequently, participant-beneficiaries rarely can plead a cause of action against healthcare companies that would not "duplicate, supplement, or supplant" ERISA.

The post-Davila precedents cited above, on the other hand, govern an entirely different set of parties and circumstances. Those cases address suits healthcare providers have commenced against healthcare companies. Healthcare providers, like Feldman's Pharmacy, customarily contract with healthcare companies, like Carefirst, directly. See, e.g., the PPP. Unlike participant-beneficiaries, then, a healthcare provider often possesses a legal remedy separate and independent of ERISA. Providers can sue healthcare companies directly under their mutual contract, as Feldman's Pharmacy, here, has done under the PPP. Alternatively, if participant-beneficiaries have assigned the provider his right to payment and/or his right to benefits, the provider inherits the assignor-participant-beneficiaries' right to relief and as such, may bring a derivative ERISA claim as well. The provider then can pursue either avenue.

As the Eleventh Circuit explained in a case Defendant cites,

[A] provider that has received an assignment of benefits and has a state law claim independent of the claim arising under the assignment

12

> holds two separate claims.  In such a case the provider may assert a
> claim for benefits <u>under ERISA, the state law claim, or both</u>.
> <u>Connecticut State Dental Ass'n v. Anthem Health Plans, Inc</u>., 591
> F.3d 1337, 1347 (11th Cir. 2009)(emphasis supplied).

Because precisely such circumstance has occurred here, the question for this Court then

becomes not "<u>could</u> Plaintiff assert a derivative ERISA claim under 29 USCA § 1132(a)"

(Defendant's Opposition Brief, p.8)(emphasis supplied), but <u>did</u>  Feldman's Pharmacy do

so?  Clearly, Feldman's Pharmacy did not.

### B.  Defendant Mischaracterizes Plaintiff's Asserted Right to Relief

ERISA's complete preemption doctrine does obligate the Court to penetrate

the face of the Complaint to determine whether <u>Plaintiff</u> artfully has pleaded its suit to

avoid federal jurisdiction and whether <u>Plaintiff's</u> claims, in actuality, "duplicate,

supplement, or supplant" ERISA's civil enforcement mechanism.  <u>See  Pascack Valley</u>

<u>Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393, 400 (3rd Cir.

2004); <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 209 124 S. Ct. 2488, 2495 (2004).

What the law does not allow is Carefirst's attempt to re-craft Plaintiff's

Complaint.  That is, to devise a basis for federal jurisdiction, CareFirst has superimposed

Plaintiff's response to the ancillary Interpleader Complaint.[7]    (<u>See</u> Motion to Remand,

Becker Dec., <u>Exhibit E</u>; "Plaintiff's Response to the Interpleader Complaint;" <u>See</u> <u>also</u> the

Removal Petition, ¶ 13; Defendant's Opposition Brief, <u>passim</u>).    Plaintiff's actual

---

[7]    The State Court never ruled on Carefirst's Third-Party Complaint and Counter-
Complaint For Interpleader Defendant and Plaintiff's Responses to the Interpleader
Complaint.

Complaint however does not contain a single mention of the Assignments.  As pleaded, the Complaint confines itself to three state law causes of action—breach of contract,[8] unjust enrichment, and bad-faith.   Whatever derivative claims, rights, and remedies Feldman's Pharmacy's patients may have granted Plaintiff through the Assignments it reserves for future litigation.  See Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc., 187 F.3d 1045, 1050-2 (9th Cir. 1999)(ERISA-covered plan's beneficiaries' mere assignment of their right to reimbursement did not convert provider's claims under separate contract into removable action).   Plaintiff's claims, at present, originate in its provider contract, the PPP, and sound, as such, in contract and related principles of law and equity.

Defendant's fallacy lies in inferring that Plaintiff cannot plead its claim to payment as an out-of-network provider without implicating the Assignments and derivatively, ERISA § 502(a)(1)(B).  See Defendant's Opposition Brief, p. 5.   Defendant, however, has disregarded case law to the contrary.  See In re Managed Care Litigation, 298 F. Supp.2d1259, 1293 (S.D. Fla. 2003)(non-contracting health providers accrue

---

[8]    Should the State Court rule that the PPP does not entitle Feldman's Pharmacy to payment as an "in-network provider"—or should discovery unearth more probative revelations-- Plaintiff reserves the right to amend the Complaint to add to its current claims Plaintiff's right to payment as an "out-of-network provider" as well under state law.   In re Managed Care Litigation, 298 F. Supp. 1259, 1293 (S.D. Fla. 2003)(non-contracting health providers accrue claims under constructive contract, implied-in-fact contract, and unjust enrichment); See also Medical and Chirurgical Faculty v. Aetna, 221 F. Supp. 2d 618, 620-1 (D. Md. 2002)(preemption of state law claims would leave non-contracting medical providers with no viable civil remedy).

claims under constructive contract, implied-in-fact contract, and unjust enrichment); Sheridan Healthcorp., Inc v. Neighborhood Health Partnership, 459 F. Supp. 2d 1269 (S.D. Fla. 2006)(whether providers' services following expiration of HMO created claim for implied-in-fact contract is a question of state law outside ERISA); see also Medical and Chirurgical Faculty v. Aetna, 221 F. Supp. 2d 618, 620-1 (D. Md. 2002)(ERISA's preemption of state law claims would leave non-contracting medical providers no viable civil remedy); Thomas v. Capital Medical Management Associates, LLC, 189 Md. App. 439, 459(Md. App. 2009)("implied in fact contract" means parties had a contract that can be seen in their conduct rather than in an explicit set of words)

Secondly, Plaintiff has yet to litigate fully its entitlement to reimbursement as an out-of-network provider. As Defendant observes, Plaintiff, at present, is asserting that the PPP establishes Feldman's Pharmacy an in-network provider and that Carefirst owes it payment in this capacity. (Defendant's Opposition Brief, pp. 1, 5)  This explains why Plaintiff's alternative theory-- namely that Carefirst owes it payment as an "out-of-network" provider-- consists of two subordinate clauses, totaling five lines, in a twelve page complaint. See the Complaint, ¶¶ 29, 35).  Until a court rules on the right to payment the PPP awards Feldman's Pharmacy as an in-network provider, the basis of Plaintiff's right to relief as an "out-of-network" provider is speculative and its claim, as such, are latent. Even assuming arguendo then that Plaintiff's claim for "out-of-network" benefits "duplicated, supplemented, or supplanted" ERISA § 502(a)(1)(B)—it does not, of

15

course; see above— the Removal Petition still fails to establish federal subject matter jurisdiction as a matter of law.  See Long v. Bando Mfg. of America, Inc., 201 F.3d 754, 760 (6th Cir. 2000)(interpreting Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)(no federal question jurisdiction when the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question); See also Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 153 (4th Cir.1994)("[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist.")

C.    The Templin Case Is Inapposite to Plaintiff's Suit

Carefirst's has misrepresented the relevance of Templin v. Independence Blue Cross, Civil Action No. 09-4092 (JHS)(see, generally, Defendant's Opposition Brief, Section II. B.) to the instant suit.  Both seek payment from BCBSA affiliates for their refusal to reimburse pharmacies for the blood factor they have dispensed to hemophilia patients.  There, the similarities end.

CareFirst correctly notes that in Templin, Feldman's Pharmacy (i) joined primary plaintiff FCS Pharmacy LLC ("FCS"), along with two individual plaintiffs BCBS insures, in suing Carefirst and its Pennsylvania BCBSA affiliate, Independence Blue Cross

16

("Independence") and (ii) based its primary grounds for relief under ERISA § 502(a).[9] However, Templin "closely mirrors the instant case" (Defendant's Opposition Brief, p. 10) as the distortion in a funhouse mirror matches one's reflection.  Templin is the very kind of ERISA case the instant action is not.  It is a case in which the plaintiff pharmacies expressly based their suit on their patients' assignment of rights and expressly asserted an ERISA claim because a provider contract did not bind the principal parties.  Far from equating the two cases, this fundamental difference demonstrates why the Court should remand the instant suit.  Because FCS and Independence had not executed a participating provider contract, FCS, could not bring the discrete suit independent of its insureds' rights as Plaintiff, in this action, has commenced under the PPP.  In Templin, the plaintiffs had to rely on the assignments and to pursue their primary cause of action through ERISA § 502(a) by default.    Feldman's Pharmacy, conversely, did not have to rely on the Assignments for remedy in the instant suit because of the PPP and did not have to assert an ERISA claim.  More importantly, Plaintiff has not.  This Court lacks federal subject matter jurisdiction accordingly over Plaintiff's action.[10]

---

[9]     Both Feldman's Pharmacy and Carefirst were subordinate parties:  unpaid claims FCS submitted to Independence comprised a negligible percentage of the total amount in dispute.

[10]     Whether this Court possesses supplemental jurisdiction to adjudicate Plaintiff's claims for breach of contract, unjust enrichment, and bad faith, as Defendant contends, are therefore accordingly.    (Defendant's Opposition Brief, p. 9)(citing 28 U.S.C. § 1441(c).

### D.   The Anti-Assignment Clauses Reveal Defendant's Charade

Nowhere does Defendant expose the transparent gamesmanship that drives the Removal Petition and that precipitated this lawsuit in the first place than in the following sentence:

> In other words, the fact that Plaintiff may not be able to recover under the Assignments (because of anti-assignment clauses) does not mean that Plaintiff's claim does not fall under ERISA § 502(a), and therefore subject to complete preemption and removal... But those issues are for another day. (Defendant's Opposition Brief, p. 11)

This means the foundation of Defendant's Removal Petition rests on Assignments Defendant actually regards as null and void. In short, they serve as a prop in an elaborate charade CareFirst has devised to enjoy a legal equivalent of the sovereign immunity reserved for foreign states. See 28 U.S.C.A. §§ 1602-1611 ("Foreign Sovereign Immunities Act")(comity protects foreign states from the inconvenience of suit).

It appears that CareFirst is attempting first to use the Assignments to attribute to Plaintiff an illusory ERISA claim in order to concoct federal jurisdiction over an everyday contract case arising under state law. Second, CareFirst will argue that ERISA preempts Plaintiff's state law claims and that therefore ERISA alone confers Plaintiff a legal basis for relief.[11] Finally, CareFirst will argue that the non-Assignment clause its

---

[11]   Despite the "pendent jurisdiction" CareFirst affects to embrace, CareFirst knows it cannot be liable to Plaintiff both directly as a provider and derivatively, as its patients' assignor (Defendant's Opposition Brief, p. 9). Plaintiff is entitled to reimbursement as one or the other, not both. ERISA's complete preemption doctrine would preclude a court from exercising supplemental jurisdiction over any cause of action sharing the same

insureds' health plans supposedly contain, id., require that the court dismiss Plaintiff's

case and deny Plaintiff any remedy.   In Templin, the BCBS defendants, in fact, invoked

the non-assignment clauses to contest the pharmacy plaintiffs' standing and to move for

their dismissal.   CareFirst proceeded likewise in St. Mary's Hospital v. CareFirst, 192 F.

Supp. 2d 384 (D. Md. 2002).

> To attribute to Plaintiff an ERISA claim under the Assignments Plaintiff does
not assert only would clear the stage for CareFirst to seek to dismiss Plaintiff's case and
to escape legal accountability through tactical legerdemain.

---

gravamen.

## Conclusion

For the reasons set forth herein, Plaintiff's Motion to Remand should be granted.

Dated:      March 31, 2010

BAROODY & O'TOOLE

_____/S/_____
Thomas O'Toole (No. 10227)
201 N. Charles Street, Suite 2102
Baltimore, MD 21201
(410) 539-8412 (telephone)
(410) 539-8411 facsimile)
nbaroody@aol.com

Admitted *pro hac vice*
PADUANO & WEINTRAUB LLP
Anthony Paduano
Jordan D. Becker
1251 Avenue of the Americas, Ninth Floor
New York, New York 10020
(212) 785-9100 (telephone)
(212) 785-9099 (facsimile)
ap@pwlawyers.com
jdb@pwlawyers.com
Attorneys for Plaintiff

20

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2010, the foregoing document was electronically

forwarded to

> Alan Dean Stocksdale
> CareFirst Blue Cross Blue Shield
> 1501 S. Clinton Street
> Suite 700, CT10-06
> Baltimore, MD 21224

And mailed, first class postage prepaid to:

> Patrick de Gravelles
> CareFirst Blue Cross Blue Shield
> Office of Corporate Counsel
> 840 1st Street, N.E., DC 12-08
> Washington, DC 20065

_____/S/_____
Thomas O'Toole

21