PADUANO & WEINTRAUB LLP
1251 AVENUE OF THE AMERICAS
NINTH FLOOR
NEW YORK, NEW YORK 10020

TELEPHONE: 212-785-9100
TELECOPIER: 212-785-9099

July 22, 2010

**VIA ELECTRONIC FILING**

The Honorable Beth P. Gesner
United States Magistrate Judge
United States District Court for the District of Maryland
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:   Feldman's Medical Center Pharmacy, Inc.
             v. CareFirst, Inc., Civil Action No. 1:10-cv-00254-WDQ

Dear Judge Gesner:

      This letter is in response to the Court's request for additional information regarding three depositions noticed by Plaintiff Feldman's Medical Center Pharmacy which Defendant CareFirst, Inc., without motion, seeks to avoid.

      This case is a simple collection matter, albeit for large sums of money and concerning life-saving medication that was provided to hemophiliacs insured by CareFirst.[1] One of the main problems in prosecuting this case is the opacity of CareFirst's internal structure. One year into this litigation, CareFirst –intentionally we believe – has still not identified to Feldman's those CareFirst employees responsible for blocking payment to Feldman's or those CareFirst employees with the authority to approve payments to CareFirst. In fact, CareFirst refuses to even identify which of its employees had knowledge or information relating to the allegations in Feldman's Complaint. Further to this, CareFirst has never actually issued "denials" of the claims submitted by Feldman's. As the Court can see clearly from CareFirst's Answer, no specific factual or legal defense has been asserted.

      Feldman's First Set of Interrogatories to CareFirst posed the standard question regarding those CareFirst employees with knowledge or information

---

[1] Although we refer to the patients as "insured by CareFirst," in actuality some of the patients were insured by a different Blue Cross Blue Shield Association ("BCBSA") licensee for whom CareFirst was required to act as claims administrator based on internal BCBSA procedures known as BlueCard.

PADUANO & WEINTRAUB LLP

relating to the allegations in the Complaint. CareFirst responded by objecting and telling Feldman's to look for the names "in the documents produced by the parties in this litigation." See Interrogatory No. 1 in the CareFirst Responses attached hereto as Exhibit A.

Feldman's has already conducted five depositions of CareFirst employees – including those in the Special Investigations, Credentialing, and Contracting departments – for the purpose of learning the identity of the decision-maker(s) here so that, eventually, the grounds for the refusal to pay could be probed and challenged. In each case, the deponent struggled to identify any individual or department ultimately responsible for denying the Feldman's claims or with the authority to approve those claims. In many cases, the deponent indicated that Winston Wong and/or Dr. Daniel Winn was involved in the review and the decisions made to put a "hold" on the claims. CareFirst has created these difficulties, we suspect, because there is no legitimate defense to any of the Plaintiff's claims; indeed the very recent arguments that Plaintiff – alone among all retail pharmacies in the State of Maryland dispensing injectables – was required to have an RSA license is not pleaded in the Answer and is not formally before the Court in any motion.

Despite a considerable expenditure of time by Plaintiff to articulate the precise factual issues as to which there is no dispute, at this point no stipulation has been signed and all issues are still part of this case. Feldman's should therefore not face any restrictions on its ability to take depositions in conformity with the applicable rules. The Federal discovery rules are liberally construed. See, e.g., Green v. Bock Laundry Mach. Co., 490 U.S. 504, 510 (1989). Even, however, if the issues were narrowed by stipulation or admission, it is essential to Feldman's case that it be permitted to examine individuals who have made decisions denying it reimbursement for the life-saving drugs delivered to CareFirst's insureds, even after Plaintiff received verbal approval from CareFirst to dispense and after CareFirst delivered written confirmation of such to each insured. We believe it completely inappropriate that one year into the litigation, CareFirst has not even identified who those individuals are.

The names that follow are those given to us by CareFirst's employees under oath, but Plaintiff would be pleased to cut to the chase and examine those actually involved if CareFirst insists these are the wrong people.

### Winston Wong, CareFirst Pharmacy Director

Feldman's first noticed Mr. Wong's deposition on September 18, 2009 via the deposition notice attached hereto as Exhibit B. CareFirst has engaged in various forms of delay for the last 10 months, and now argues in a July 12, 2010 letter to the Court, attached as Exhibit C, that Mr. Wong's testimony is "needless."

Elizabeth Foreman, the CareFirst investigator who "investigated"

2

PADUANO & WEINTRAUB LLP

Feldman's, stated that Mr. Wong was involved in denying Feldman's claims.[2]

> Q. Who is the decision maker regarding whether a claim is paid or not paid?
>
> A. We have claims reviewed by medical directors, we use professional advisors, and we have clinical personnel in our unit.
>
> Q. Regarding the claims submitted by Feldman's Pharmacy, who has made a determination as to whether claims are to be paid or not paid?
>
> A. The claims that came through our department were either reviewed by the pharmacy director at CareFirst, and if there were no records, no one reviewed them in our unit.
>
> Q. Who is the pharmacy director of CareFirst you just referred to?
>
> A. Winston Wong.
>
> \* \* \*
>
> Q. Who are the people involved who reviewed claims submitted by Feldman's Pharmacy?
>
> A. I believe claims have been directed to the claims operations area, and some of them have come to our unit for a review. Then they may be reviewed by the medical director which, in this case, was Winston Wong. Some claims were denied just because of the contract.

See the relevant excerpts from Ms. Foreman's deposition at Exhibit D.

CareFirst's Director of Special Investigations, Andrea Cherenzia, also testified that Mr. Wong was involved in reviewing the medical documentation associated with Feldman's claims. See Exhibit E hereto.

Finally, even if CareFirst stipulated to every fact requested by Feldman's, Mr. Wong's deposition would still be necessary. One of CareFirst's defenses – as revealed on the July 20 telephone conference, but again, not contained in its Answer or any pending motion – is the purely legal argument that even if Feldman's employees did not enter a patient's home (the criterion for requiring an RSA -- see Fagan transcript at 25:10 of Exhibit F), an RSA would still be required because of the "nature" of the products delivered by Feldman's. This is an apparent assertion that Factor VIII medication is a "blood or blood product." See Exhibit F. But, the medicine dispensed by Feldman's is a synthetic clotting factor and does not constitute a "blood or blood product." See Exhibit G. If CareFirst argues that an RSA license was required based on the nature of the medication dispensed, Feldman's should have the right to take the deposition of the

---

[2] Contrary to CareFirst's current posture that the only reason for denial of Feldman's claims is the lack of an RSA prior to December 2008, according to Ms. Foreman's testimony there were other reasons for denying the claims, including alleged contract issues and medical necessity.

3

PADUANO & WEINTRAUB LLP

CareFirst employee most knowledgeable about the true nature of the medication. We suspect that Dr. Wong, when confronted under oath, will lay waste to this most recent legal defense concocted by CareFirst.

### Dr. Daniel Winn, Chief Medical Director

Feldman's first noticed Dr. Winn's deposition on September 18, 2009. See Exhibit H hereto. Again, without ever having made a motion, CareFirst now argues that Dr. Winn's testimony is "needless."

As shown above, and by the testimony of Ms. Foreman and Ms. Cherenzia (see Exhibits D and E), CareFirst's own employees have asserted that Dr. Winn reviewed the claims at issue and is one of the CareFirst employees with the authority to deny claims. Feldman's should therefore have the right to inquire into Dr. Winn's role in reviewing the claims and determining medical necessity.

Even if CareFirst stipulates to the medical necessity of the medication, it is still possible that it will raise a defense based on medical issues, as it has attempted to do with the issue of whether the synthetic factor VIII is a "blood or blood product." It is therefore necessary for Feldman's to examine Dr. Winn, and great prejudice will result otherwise. We believe that Dr. Winn will testify that the medicine dispensed by Feldman's was not a "blood or blood product." We further believe that Dr. Winn will testify that there is no medical reason to deny Feldman's claims, and that it is impossible for someone to determine the medical necessity of blood clotting medication without physically examining a patient.

### Janet Chavarria, Analyst-Institutional Credentialing

Feldman's first noticed Ms. Chavarria's deposition on September 18, 2009. See Exhibit I hereto. While arguing to the Court that it has a defense based on credentialing, CareFirst, rather incredibly, now asserts that Ms. Chavarria's testimony is unnecessary.

During the July 20, 2010 telephonic conference, CareFirst objected to Ms. Chavarria's deposition because she works in the Credentialing department. Whatever it is that "credentialing" actually means, Ms. Chavarria played a lead role in the RSA issue for CareFirst and Feldman's is entitled to take her deposition.

Ms. Chavarria wrote a letter to Barbara Fagan, Program Director for Maryland's department that issues RSA licenses, requesting an opinion as to whether an RSA is required. See Exhibit J. Ms. Chavarria's April 14 letter posed a hypothetical regarding a "Home Infusion Therapy agency." Ms. Chavarria's question led to a response from Ms. Fagan on April 16, 2010 advising Ms. Chavarria that "if a company that providers [sic] Home Infusion Therapy to a patient in their home, including delivery, set up and maintenance, that company is required to be licensed as a Residential Service Agency." See Exhibit J. At her deposition, Ms. Fagan also admitted that she had spoken to Ms. Chavarria on numerous occasions, including around the time of Ms. Chavarria's April 14 letter

4

PADUANO & WEINTRAUB LLP

that contained the deceptive hypothetical. According to Ms. Fagan's recollection, that particular telephone call was regarding Feldman's licensure status and the "definition of a residential service agency." See Exhibit F at 129:12.

It is therefore clear that Ms. Chavarria played the prime role for CareFirst in the conversations between CareFirst and the Office of Health Care Quality regarding (i) Feldman's and (ii) CareFirst's assertion that Feldman's required an RSA license well after the written and verbal approvals. Even if the parties stipulated to every other fact in the case aside from the RSA issue, Ms. Chavarria's deposition would indisputably be relevant and necessary.

For the foregoing reasons, Feldman's is entitled to examine Mr. Wong, Dr. Winn, and Ms. Chavarria.

Respectfully,

Jordan D. Becker

cc:  Patrick P. de Gravelles, Esq. (via electronic mail)
     Dean Stocksdale, Esq. (via electronic mail)
     Thomas O'Toole, Esq. (via electronic mail)