CareFirst BlueCross BlueShield
840 1st Street, NE
Washington, DC 20065

Patrick de Gravelles
Litigation General Counsel
Office of Corporate Counsel
Tel:   202/680-7457
Fax:   202/680-7620
E-mail: patrick.degravelles@carefirst.com



July 26, 2010

Via Electronic Filing
Hon. Beth P. Gesner
United States Magistrate Judge
United States District Court for the District of Maryland
Baltimore Division
101 W. Lombard Street
Baltimore, MD 21201

Re: Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.
    Civil Action No: 1:10-cv-00254-WDQ

Dear Judge Gesner:

    Defendant CareFirst, Inc. ("CareFirst")[1] submits this letter in accordance with the Court's Order dated July 21, 2010.

    As an initial matter, CareFirst notes that Plaintiff Feldman's Medical Center Pharmacy, Inc. ("Feldman's") has not agreed to narrow this litigation even though CareFirst's has offered to stipulate that the only issue to be decided is whether Feldman's needed a the Residential Services Agency license ("RSA") for the services it provided prior to December 11, 2008.

    Feldman's makes the general argument that because the case is still pending, all facets are subject to discovery. Feldman's also contends that it needs depositions to determine who at CareFirst made what decision, and to resolve certain issues regarding the

---

[1] The term "CareFirst" is also used herein to refer collectively to CareFirst, Inc.'s affiliates which actually issue insurance, CareFirst of Maryland, Inc. ("CFMI") and Group Hospitalization and Group Services, Inc. ("GHMSI"). CareFirst, Inc. is a holding company that does not issue any policies. Counsel for the parties have already discussed issues concerning the need to allow those two affiliates to intervene in the lawsuit.

CareFirst BlueCross BlueShield is the shared business name of CareFirst of Maryland, Inc. and Group Hospitalization
and Medical Services, Inc. which are independent licensees of the Blue Cross and Blue Shield Association.
®Registered trademark of the Blue Cross and Blue Shield Association.  ®' Registered trademark of CareFirst, Inc.

Hon. Beth P. Gesner
July 26, 2010
Page 2

RSA requirement. As set forth below, Feldman's arguments do not justify its asserted need for the three depositions at issue.

Before addressing the specifics of the discovery disputes, it is important to understand the contours of the RSA issue. This knowledge will aid the Court in evaluating the parties' arguments on discovery.

As noted, the critical question in this litigation is whether Feldman's needed a RSA to provide the services that it did prior to December 11, 2008 (on which date Feldman's obtained its RSA). That question is a simple one that hinges on Maryland's RSA statutes.

Those statutes are found at §§ 19-4A-01 through 19-4A-10 of the Health – General Article.[2] Section 19-4A-04 requires a person to obtain an RSA before operating as a residential service agency. Section 19-4A-08 makes it a criminal violation to operate a residential service agency without an RSA. The Department of Health and Mental Hygiene (hereafter "the Department") is charged with adopting regulations that implement the law. § 19-4A-03. It is also a criminal violation to operate a residential service agency license in violation of the Department's regulations. Section § 19-4A-03.

Section 19-4A-01 contains the all important definitions. Subsection (e) states that a residential service agency is one who "provide[s] home health care for compensation to an unrelated sick or disabled individual in the residence of that individual." In turn, subsection (b) defines "home health care" to include "(3) Drug services; ... (10) Provision of invasive medical equipment; and (11) Home medical equipment services." The last term ("home medical equipment") is defined in subsection (c) as "the delivery, installation, maintenance, or replacement of, or instruction in the use of, medical equipment used by a sick or disabled individual to allow the individual to be maintained in a noninstitutional [sic] environment." Finally, the term "invasive medical equipment" is defined by the Department as "any device that invades tissue or a body cavity to maintain treatment modalities...." COMAR 10.07.05.01(9).

In sum, Maryland law requires an entity to have an RSA if that entity provides medical services to someone so that person can receive treatment at home, rather than in an institutional setting. Providing medical services can mean providing medicine, or delivery or replacement of medical equipment, or providing invasive medical equipment, *i.e.* anything that invades tissue or a body cavity to deliver treatment.

Feldman's delivered to individuals' homes Factor products along with certain supplies necessary to administer those products, including needles, syringes and sharps containers. Moreover, Feldman's submitted documents under penalty of perjury stating that it was conducting activities that could only be performed in patients' homes. During

---

[2] Unless otherwise noted, all statutory references are to the Health – General Article.

Feldman's RSA application and annual renewal processes, a Feldman's representative signed affidavits under penalty of perjury stating that: 1) Feldman's would conduct home surveys and on-going monitoring of patients' homes to make sure that those homes were appropriate settings for home treatment; and 2) Feldman's had indeed provided such services as a residential service agency. This issue was discussed at length during the deposition of Barbara Fagan.[3,4]

Feldman's argues that two questions related to the RSA issue justify the depositions at issue. First, Feldman's argues it needs discovery to determine if the factor products it delivered were blood products. While subsection B.(8)(e) of COMAR 10.07.05.01 refers to blood and blood products, as explained above, that subsection plays no role in this case. The issue therefore does not support any depositions in this case.

Second, Feldman's argues that because the *sine qua non* of residential service agency is crossing the threshold of a patient's home, discovery is warranted. CareFirst believes that the plain language of the statutes makes home delivery of medicines and items like needles and syringes enough to require an RSA. That dispute, however, relies on the interpretation of the statute. The only conceivable discovery yet to be conducted on this particular issue is whether Feldman's employees ever entered patients' homes. (In fact, when it applied for its RSA a Feldman's representative signed an affidavit under oath indicating that Feldman's engaged in activities that required it to cross the thresholds of its patients' homes.) If established, those facts would make the legal dispute about the statute moot. That discovery can only come from Feldman's employees or its patients. Depositions of CareFirst's employees will not shed light on this issue.

Feldman's main argument, though, is that it needs the proposed depositions to find out who at CareFirst made what decisions. That argument fails for two reasons. First, CareFirst is the defendant and its actions are the sum of those of its employees'. The critical point here is that CareFirst has made the decision not to pay the claims absent a finding by the Court that it is legally required to do so. Second, Feldman's already has the information, notwithstanding its claims to the contrary.

---

[3] In an effort to comply with the Court's five page limitation, CareFirst will not attach portions of deposition transcripts referred to herein. CareFirst is happy to supply those documents if the Court wishes to review them.

[4] Feldman's counsel states that CareFirst only recently raised the RSA issue. The record does not bear out that assertion. On October 13, 2009, Feldman's counsel deposed Lisa Anuszewski, a CareFirst employee. During that deposition, Feldman's counsel introduced an e-mail dated December 16, 2008, in which an employee from Feldman's parent told CareFirst that "we have completed the process of accessing and obtaining the RSA requirement...."

Jaime Hanson is an investigator who works in CareFirst's Special Investigations unit. Feldman's deposed Ms. Hanson and during that deposition, the following was discussed. CareFirst started investigating Feldman's parent company because a fraud alert was issued. Ms. Hanson requested that Feldman's claims be "pended," meaning they would undergo review by Special Investigations. The pend was approved by Andrea Cherenzia or Betty Foreman, Ms. Hanson's supervisors. The pend was never removed when it became known that Feldman's lacked the proper licensure.

Feldman's disregarded Ms. Hanson's testimony and instead cited to the depositions of Andrea Cherenzia and Betty Foreman. Both of them work in Special Investigations, but in supervisory roles. Feldman's counsel misrepresents to the Court that Ms. Foreman was the person who investigated Feldman's. Again, it is very clear from her deposition as well as that of Ms. Hanson that Ms. Hanson had that responsibility.

Feldman's also ignores a key Interrogatory. In Interrogatory No. 5, it asked CareFirst to describe all reasons why CareFirst had not paid Feldman's claims. The response does not mention or even allude to issues concerning medical necessity. Instead, the Response cites only the corporate identity issue (see footnote 1, *supra.*), the issue of whether Feldman's is a contracted or non-contracted provider (something that is not the subject of any of the discovery at issue and quite frankly, is not overly critical at this point as Feldman's has pled that it is entitled to recovery either as a contracted provider or as an assignee of its patients' ERISA rights) and the RSA question.

With this understanding, it is clear that Feldman's argument for each of the depositions fails. Feldman's contends it needs the depositions of Winston Wong and Daniel Winn for two reasons: to inquire whether factor products are blood or blood products, and because they reviewed medical records related to Feldman's claims. As noted above, the RSA issue does not depend on whether factor is a blood or blood product. There is no evidence that either Mr. Wong or Dr. Winn denied any of Feldman's claims. Indeed, given that CareFirst acknowledges (even in its sworn interrogatory responses) that medical necessity is not an issue, these individuals' testimony is completely superfluous.

Feldman's argument that it needs Ms. Chavarria's deposition is equally unavailing. The letter on which Feldman's counsel places so much weight is dated April 16, 2010, long after the RSA issue had become the center of this litigation. Ms. Chavarria's letter sought to confirm with the Office of Health Care Quality CareFirst's understanding that Feldman's needed an RSA. Feldman's has not proffered any discoverable information that it believes it could obtain from Ms. Chavarria's testimony.

For these reasons, CareFirst respectfully requests that the Court quash the deposition subpoenas for Mr. Wong, Dr. Winn and Ms. Chavarria.

Hon. Beth P. Gesner
July 26, 2010
Page 5

The Court also asked CareFirst to address Feldman's request to serve excess discovery. As the Court requested, the proposed discovery is attached.

Most of Feldman's proposed discovery focuses on how CareFirst interacts with Feldman's competitors and whether or not Feldman's competitors received payment for services without an RSA. The attempt here is apparently to set up some waiver or selective enforcement argument.

As noted above, acting as a residential services agency without the proper RSA licensure or in violation of the regulations is a crime. CareFirst is unaware of any doctrines that allow a party to assert waiver of a criminal offense or that entitle a party to break the law because other entities are doing so as well.

The remaining four proposed discovery requests (Requests for Production 52 and 53 and Interrogatories 29 and 30) concern CareFirst's definition of infusible and injectible medications. Given the parameters of the RSA issue outlined above, it is unclear what the definitions of those terms have to do with this case.

In the end, this case comes down to the sole issue of whether Feldman's needed an RSA. Nothing in the proposed depositions or propose discovery will shed any light on that issue. Therefore, CareFirst believes that Feldman's should not be granted permission to serve it.

Sincerely,

Patrick de Gravelles

cc: Jordan D. Becker, Esq. (via electronic filing)
    Thomas O'Toole, Esq. (via electronic filing)