UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BETH P. GESNER
UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4288
(410) 962-3844 FAX

August 4, 2010

Neal C. Baroody, Esquire
Thomas O'Toole, Esquire
Baroody & O'Toole
201 N. Charles Street, Suite 2102
Baltimore, Maryland 21201

Anthony Paduano, Esquire
Jordan D. Becker, Esquire
Paduano & Weintraub LLP
1251 Avenue of the Americas, 9th Floor
New York, New York 10020

Alan D. Stocksdale, Esquire
CareFirst BlueCross Blue Shield
1501 S. Clinton Street, Suite 700
Baltimore, Maryland 21224

Patrick P. de Gravelles, Esquire
CareFirst BlueCross Blue Shield
840 First Street, NE, DC 12-08
Washington, DC 20065

Subject: <u>Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.</u>
Civil No.: WDQ-10-0254

Dear Counsel:

On July 20, 2010, I held a conference call regarding: (1) whether plaintiff Feldman's Medical Center Pharmacy, Inc. ("Feldman's") should be allowed to depose defendant CareFirst, Inc. employees Winston Wong, Daniel Winn, and Janet Chavarria; and (2) whether CareFirst should have to respond to interrogatories and requests for production of documents submitted by Feldman's that exceed the limits of the federal and local rules. Per my direction, the parties submitted letters clarifying their positions on these matters after the conference. (Paper Nos. 65, 67, 68). For the reasons discussed herein, CareFirst shall: (1) make Mr. Wong, Dr. Winn, and Ms. Chavarria available for depositions at a mutually convenient date; and (2) respond to Feldman's interrogatories and requests for production of documents.

I. **BACKGROUND**

Feldman's is a Maryland specialty pharmacy that, <u>inter alia</u>, dispenses medications for the treatment of hemophilia. (Compl. ¶ 1, Paper No. 2.) It is a participating provider in CareFirst's health insurance network. (<u>Id.</u> ¶¶ 13-17.) Specifically, the parties are bound by their Participating Professional Provider Agreement in which Feldman's agreed to provide covered services to CareFirst members and CareFirst agreed to reimburse Feldman's for the provision of such services. (<u>Id.</u>; Participating Professional Provider Agreement, Paper No. 2-1.)

On June 1, 2009, Feldman's filed suit asserting three causes of action, breach of contract, unjust enrichment, and bad faith, for CareFirst's refusal to reimburse it for claims submitted with respect to Feldman's provision of "Factor," a blood-clotting substance used in the treatment of

Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.
Civil No.: WDQ-10-0254
August 4, 2010
Page 2

hemophilia, to CareFirst's members. (Compl. ¶ 6.)[1] During the course of this suit, CareFirst has asserted various reasons for denying Feldman's claims, including that the parties' provider agreement did not cover Feldman's distribution of Factor since it only covered "durable medical equipment." (Def.'s Resp. Pl.'s Mot. Prelim. Inj., July 1, 2009, Paper No. 7 at 2-3.) Recently, however, CareFirst has represented to Feldman's and the court that it concedes that its only defense for not reimbursing Feldman's is that, prior to December 11, 2008, Feldman's distributed Factor without a Residential Services Agency ("RSA") license in violation of Maryland law. (See, e.g., E-mail from Patrick de Gravelles, Def. Counsel, to Jordan Becker, Pl. Counsel, July 8, 2010, Paper No. 61-1 (offering "to stipulate that all conditions precedent to payment of the pre-December 11, 2008 claims at issue have been met (such as medical necessity, proper party, etc.) except for the issue of whether [Feldman's] needed a residential services agency license, which of course it received on December 11, 2008").)

In light of this concession, CareFirst takes the position that Feldman's should not be allowed to conduct discovery on any issue other than whether Feldman's distribution of Factor without an RSA license constituted a violation of Maryland law. (Paper No. 67 at 1-2.) Accordingly, CareFirst has asked the court to quash subpoenas issued by Feldman's for depositions of Mr. Wong, Dr. Winn, and Ms. Chavarria since, according to CareFirst, these individuals have no relevant information with respect to the RSA issue. (Paper No. 67.) Additionally, CareFirst has refused to respond to interrogatories and requests for production of documents served by Feldman's on CareFirst since (1) Feldman's exceeded the limit for such discovery under the federal and local rules, and (2) these interrogatories and requests do not seek information relevant to whether Feldman's distribution of Factor without an RSA license violated Maryland law. (Id. at 5.)[2]

---

[1] Feldman's filed suit in the Circuit Court for Baltimore County. CareFirst removed the case to federal court on the ground that one of Feldman's claims is completely preempted by § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Feldman's filed a motion to remand the case to state court, which Judge Quarles denied on June 29, 2010. (Paper Nos. 53 & 54.)

[2] Per my direction, counsel engaged in discussions with respect to a stipulation that might limit the need for discovery. According to correspondence submitted to the court, plaintiff's counsel proposed a draft "Stipulation of Undisputed Facts" with 21 proposed stipulations. Defense counsel, however, objected to many of plaintiff's proposed stipulations. For example, plaintiff's counsel proposed a stipulation that "[n]o state in the United States has a law that requires an RSA to be a prerequisite to deliver factor drugs to patients" to which defense counsel objected to on the ground that "[p]laintiff is well aware that this is the one thing that CareFirst disputes." Ultimately, counsel were not able to reach an agreement on a stipulation.

Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.
Civil No.: WDQ-10-0254
August 4, 2010
Page 3

## II.     FELDMAN'S PROPOSED DEPOSITIONS

To determine whether to allow Feldman's proposed depositions, the court must apply Federal Rule of Civil Procedure 26(b).  Pursuant to Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  This general rule, however, is subject to the limitation of Fed. R. Civ. P. 26(b)(2), which provides that the court must limit discovery if: (1) such discovery is "unreasonably cumulative or duplicative" or "unduly burdensome"; (2) the party seeking discovery has had "ample opportunity" to obtain it; or (3) the "burden or expense of the proposed discovery outweighs its likely benefit."

Applying Rule 26(b), the court concludes that Feldman's has adequately articulated the relevance of the information it seeks to obtain through depositions of Winston Wong, CareFirst's Pharmacy Director, and Daniel Winn, CareFirst's Chief Medical Director, and that CareFirst has not established the presence of any of the Rule 26(b)(2) factors.  First, according to Feldman's, Mr. Wong and Dr. Winn were involved in CareFirst's decision to deny the claims at issue in this suit and, therefore, their depositions are necessary "to understand CareFirst's actions in this case." (Paper No. 68 at 3.)  Specifically, Feldman's asserts that "CareFirst – at least initially – invalidated Feldman's claims" because CareFirst employees, including Mr. Wong and Dr. Winn, determined that Factor is not "medically necessary."[3]  (Id. at 3-4.)

In response, CareFirst asserts that Mr. Wong and Dr. Winn's opinions regarding whether Factor was medically necessary had nothing to do with the claim denials and, therefore, this information is not relevant.  (Paper No. 67 at 4.)  As Feldman's points out, however, such information is potentially relevant to establishing that CareFirst has "chang[ed] . . . justifications" for denying Feldman's claims, which is relevant to the credibility of CareFirst's defenses.

Further, Feldman's explains that that these depositions are necessary because Mr. Wong and Dr. Winn are CareFirst's most knowledgeable employees with respect to the nature of Factor and, accordingly, have information relevant to the issue of whether Feldman's was required to obtain an RSA license before distributing Factor.  (Paper No. 68 at 3.)  In light of this representation, the court concludes that Feldman's should be allowed to seek information from these individuals relating to CareFirst's position that Feldman's was required to obtain an RSA license before distributing Factor.  Accordingly, the court will allow these depositions.

With respect to Ms. Chavarria, Feldman's seeks information about her conversations with Barbara Fagan, Program Director for Maryland's Office of Health Care Quality (the department tasked with issuing RSA licenses), regarding whether Feldman's needed an RSA license to distribute Factor.  (Paper No. at 4-5.)  Specifically, in response to an allegedly "deceptive

---

[3] Pursuant to the parties' Provider Agreement, CareFirst will only reimburse Feldman's for its provision of "medically necessary" services to CareFirst's members.  (Paper No. 2-1 at 1.)

Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.
Civil No.: WDQ-10-0254
August 4, 2010
Page 4

hypothetical" from Ms. Chavarria, Ms. Fagan issued a broadly worded letter to CareFirst advising that, "if a company that providers [sic] Home Infusion Therapy to a patient in their home, including delivery, set up and maintenance, that company is required to be licensed as a Residential Service Agency."  (Id.; Paper No. 65-10 at 1.)  Again, Feldman's should be allowed to discover information relating to CareFirst's position that Feldman's was required to obtain an RSA license before distributing Factor.  Since Feldman's has adequately articulated what information it seeks from Ms. Chavarria in this respect, the court will allow this deposition.

### III.     FELDMAN'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

From July 1, 2009 to December 24, 2009, plaintiff served 46 requests for production of documents and 21 interrogatories on CareFirst.  (Paper No. 59 at 2.)  On February 1, 2010, CareFirst removed this case from the Circuit Court for Baltimore County to this court.  (Paper No. 1.)  On April 27, 2010 and April 28, 2010, plaintiff served its 47th through 53rd requests for production and its 22nd through 30th interrogatories.  (Pl.'s Second Interrogs., Apr. 28, 2010, Paper No. 67-1; Pl.'s Third Req. Produc. Docs., Apr. 27, 2010, Paper No. 67-2.)

Feldman's most recent interrogatories and requests for production focus on: (1) CareFirst's interaction with Feldman's competitors, particularly whether CareFirst has reimbursed Feldman's competitors for the provision of similar services even though those entities did not have an RSA license; and (2) CareFirst's definition of "infusible" and "injectible" medications.  (Id.)  As noted, CareFirst objects to these interrogatories and requests for production on the ground that (1) Feldman's exceeded the limit for such discovery under the federal and local rules, and (2) they do not seek information relevant to whether Feldman's distribution of Factor without an RSA license violated Maryland law.

Pursuant to Fed. R. Civ. P. 33(a), a party may serve no more than 25 written interrogatories on any other party.  The court, however, should grant a party leave to serve more than 25 interrogatories "to the extent consistent with Rule 26(b)(2)."  Fed. R. Civ. P. 33(a).  As noted above, Rule 26(b)(2) provides that the court must limit discovery that is otherwise allowable if: (1) such discovery is "unreasonably cumulative or duplicative" or "unduly burdensome"; (2) party seeking discovery has had "ample opportunity" to obtain it; or (3) the "burden or expense of the proposed discovery outweighs its likely benefit."  In addition, Local Rule 104.1 provides that, "unless otherwise ordered by the Court, . . . no party shall serve upon any other party . . . more than thirty (30) requests for production."

The court has reviewed Feldman's interrogatories and requests for production and concludes that they seek relevant information and that none of the Rule 26(b)(2) factors are present.  Accordingly, the court will grant Feldman's leave to serve this discovery.  In particular, in light of the apparent importance of the RSA license issue in this case, Feldman's should be allowed to discover information relating to CareFirst's reimbursement policies for entities that provide services similar to Feldman's.  Further, based on my review of the record, Feldman's

Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.
Civil No.: WDQ-10-0254
August 4, 2010
Page 5

should be allowed to discover information regarding CareFirst's interpretation of the terms "infusible" and "injectible," as that information is relevant pursuant to Fed. R. Civ. P. 26(b)(1).[4]

    For the reasons discussed above, CareFirst shall, within 30 days of this letter Order: (1) make Mr. Wong, Dr. Winn, and Ms. Chavarria available for depositions on a mutually convenient date; and (2) respond to Feldman's interrogatories and requests for production of documents.

    Despite the informal nature of this letter, it will constitute an Order of the Court and will be docketed accordingly.

    Very Truly Yours,

    /s/

    Beth P. Gesner
    United States Magistrate Judge

---

[4] According to Ms. Fagan's deposition testimony and her letter to Ms. Chavarria, Ms. Fagan interprets the relevant statute and regulations such that "a service provider engaged in 'home infusion' of a patient" must obtain an RSA license. (Fagan Dep. 99:7-101:22, Paper No. 65-6 at 19-21; Letter from Fagan to Chavarria, April 16, 2010, Paper No. 65-10.) Feldman's characterizes its services as "delivery of self-injectibles" as opposed to "home infusion" services. (Paper No. 68 at 4-5.)