**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:10-cv-00254-SKG |
| | ) | |
| v. | ) | |
| | ) | |
| CAREFIRST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT CAREFIRST, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

> *Q. Does Feldman's require an RSA?*
>
> *A. For the State of Maryland, it seems that way.*
>
> …
>
> *Q. And Ms. Gardner [a CareFirst employee] didn't mention
> that CareFirst wanted the RSA for the factor shipments?*
>
> *A. Apparently, not.  Not that I can remember*

Excerpts from the deposition transcript of Amy Adams, the Feldman's
Employee who wrote a letter to the State of Maryland inquiring whether
Feldman's needed an RSA.[1]

---

[1] Exhibit B to Declaration of Patrick de Gravelles in Support of Reply Memorandum at 74, lns.
14-16 and 59, lns. 9-11.

Defendant CareFirst, Inc. ("CareFirst") respectfully submits this Reply Memorandum of Law in Support of its Motion for Partial Summary Judgment (Docket Entry ("DE") 109).

## ARGUMENT

CareFirst moved for partial summary judgment on two issues: 1) the claims for Factor VIII provided to patients identified as A, B and C; and 2) interest for claims that Feldman's is seeking. *See* DE 109 at 1. Feldman's concedes that the claims for patients A, B and C are not part of this case (DE 120 at 5, n.1), so all that is left is the question of interest. With regard to the interest claims, there are three reasons to award CareFirst summary judgment. First, Feldman's never submitted any clean claims because it did not submit the claims on the proper forms. *Id.* at 25. Second, with regard to any claims for services rendered after December 11, 2008 (the date that Feldman's received its Residential Services Agency license ("RSA")), the claims were not clean because Feldman's had not submitted required records. DE 116, ¶¶ 45-46; DE 116-1; DE 115, ¶ 22; DE 115-5. Third, with regard to pre-December 11, 2008 claims, a reasonable doubt existed about whether Feldman's needed an RSA, and so the clean claim "clock" did not start until that question was resolved. DE 110 at 25-26.

### I.   THE INTEREST PERIOD DOES NOT START ANY EARLIER THAN CAREFIRST ASSERTS

Putting aside Feldman's bluster about CareFirst's ravenous greed and desire to destroy one particular provider (apparently for no discernible reason), the starting point on the question of further interest is "the fundamental principle that – put bluntly – the law is not an ass." *See Donahoe v. Donahoe*, 632 S.E.2d 42, 45 (W.Va. 2006).

Feldman's is asking this Court to give Feldman's over 50% interest on claims of about $1.5 million. And that is before Feldman's makes its claim for attorneys' fees. See DE 120 at 5, n.1. The record does not support such an outcome – indeed that award would be unconscionable.

CareFirst will not bother the Court with CareFirst's interpretation of each and every communication between the parties. The record is there, and the Court can obviously read and discern what transpired. CareFirst will simply take the opportunity to make the following points:

> A. **Feldman's Did Not Rely On CareFirst To Decide If It Needed A Residential Services Agency License ("RSA") – It Sought Advice From The State Of Maryland.**

Throughout this litigation, Feldman's has sounded a steady drumbeat of an excuse about why it obtained an RSA. It claims that it obtained that license only because CareFirst told Feldman's to do so. That theme is continued most recently in Janet Gardner's declaration. DE 120-3. Ms. Gardner asserts that "[a]lthough we [Feldman's] believed that Feldman's did not need an RSA under the law, we still relied on CareFirst's representations and demands that … Feldman's obtain" an RSA. DE 120-3 ¶ 11.

Ms. Gardner's statement does not jibe with the record, which shows that Feldman's did not rely on CareFirst's assertion about the RSA. Feldman's made a direct inquiry to the Office of Health Care Quality ("OHCQ") about whether Feldman's needed an RSA[2]. In an e-mail dated July 22, Ms. Gardner sent two attachments to CareFirst. Exhibit A to Declaration of Patrick de Gravelles in Support of Reply Memorandum ("de Gravelles Decl.") at M 01785. One of those attachments is labeled "rsa inquiry letter." In her e-mail, Ms. Gardner wrote: "I have also attached a copy of the letter that was previously sent to the state regarding our inquiry as to whether or not RSA applies to us." *Id.*

Correspondence between Feldman's and OHCQ further debunks Ms. Gardner's assertion that Feldman's obtained an RSA solely because CareFirst required one. Amy Adams, a Feldman's employee, sent a letter dated May 12, 2008, to OHCQ inquiring whether Feldman's

---

[2] At the time that Feldman's originally applied for an RSA, it was focused on its DME business. *See* Ex. B to de Gravelles Decl. at 58, ln. 21 through 59, ln. 8. But ultimately Feldman's applications and renewals for its DME covered both DME and home infusion. *See* DE 115-8 at 7.

needed an RSA for its durable medical equipment ("DME") business.  Ex. 1 to Ex. B to de Gravelles Decl.  (This may have been the "rsa inquiry letter" referred to in Ms. Gardner's e-mail.)  Ms. Adams testified that at the time, neither she nor Janet Chavarria, her CareFirst contact, was certain if Feldman's needed an RSA.  Ex. B to de Gravelles Decl. at 58, lns. 6-13.

When asked whether "CareFirst wanted the RSA for factor shipments", Ms. Adam testified:  "Apparently, not.  Not that I can remember."  *Id.* at 59, lns. 9-11.  When asked directly whether Feldman's needs an RSA, Ms. Adams testified: "*For the State of Maryland*, it seems that way."  *Id.* at 74, lns. 14-16 (emphasis added).

That testimony comports with the chain of correspondence between Feldman's and the State of Maryland in which it is clear that the State, not CareFirst, informed Feldman's that it needed an RSA.  *See* Exs. 1-3 and 5 of Ex. B to de Gravelles Decl.

It is also worth noting that Ms. Gardner's testimony under oath that Feldman's did nothing that required it to have an RSA (DE 120-3, ¶ 13) is questionable for another reason – it was she who affirmed under penalty of perjury (DE 115-8 at 9-10) that Feldman's was engaged in activity requiring an RSA.  *See* DE 115-9 at 9, lns. 15-20.  Ms. Gardner's assertion that "[n]o FHM or Feldman's personnel ever entered a home for infusion therapy or anything else" (DE 120-3 at 6, ¶ 13) is directly undercut by Feldman's May 12, 2008 letter to OHCQ in which Feldman's explained that its drivers sometimes "bring the item [of DME] into the home" of a patient. Ex. 1 to Ex. B to de Gravelles Decl.  Feldman's has never disputed that letter.

The Court has before it a plethora of documents that are important to this case because they show both that: 1) Feldman's undertook its own research of whether it needed an RSA and was told by the State of Maryland that one was needed; and 2) Feldman's never challenged the

need for an RSA.  In the face of these historical records, Feldman's simply asserts that it told CareFirst on a number of occasions that no RSA was needed.

The only reason that the question of whether Feldman's needed an RSA is *not* before the Court is because CareFirst, acting in good faith, willingly accepted Feldman's changing story about the services it actually provided.  CareFirst took that new set of facts and obtained an advisory opinion from the Maryland Board of Pharmacy and, again acting in good faith, paid the claims based on that opinion. [3]

> B.  Feldman's Does Not Dispute The Record That Shows It Failed To Provide Requested Medical Records For The Post-December 11, 2008 Claims

As Jaime Hanson explained, Feldman's failed to provide records required for CareFirst to adjust the post-December 11, 2008 claims.  DE 116, ¶¶ 45-47; DE 116-1 at 3-6; DE 115-5 at 2. Maryland law allows for a payor to request records if needed and until those records are received, the claim is not clean.  §§ 15-1005(c)(1)(ii), 15-1003(d)(1)(ii) and 15-1004(c).

Feldman's offers no real evidence to dispute Ms. Hanson's testimony and the documents that support it.  At best, Feldman's submits a rather vague statement with no detail at all that it "submitted patient medical records to CareFirst whenever CareFirst requested such records…." DE 120-4, ¶ 8.  Not a single piece of evidence supports that bald assertion.

Feldman's argues that "CareFirst refused to make payment on the Feldman's claims … related to services provided *after* December 11, 2008."  DE 120-3 ¶ 14 (emphasis in original). This is one of those themes that Feldman's repeats in this litigation.  But repetition does not make it true.  CareFirst tried to pay those claims into the court registrar by way of an interpleader, but Feldman's opposed that effort.  DE 47-2.

---

[3] Feldman's argument that the Board's opinion was anything other than advisory (DE 120 at 12) flies in the face of Maryland law.  *See Spencer v. Md. State Bd of Pharmacy*, 846 A.2d 341, 348 (Md. 2004) (explaining that when the Board's conclusions of law are reviewed by a court, the court "may substitute [its] judgment for that of the agency's.")

C.  The Uncertainty Over Whether Feldman's Needed An RSA Is A Question That Prevented Any Pre-December 11, 2008 Claims From Being Clean

As to the pre-December 11, 2008 claims, Feldman's maintains that ultimately it does not matter whether there was a reasonable dispute about whether it needed an RSA:  CareFirst must pay the additional interest regardless.  *See* DE 120 at 16-19.  For two reasons, that is incorrect.

First, let us assume that Feldman's crabbed reading of Maryland's statutory and regulatory scheme is correct, and a third party payor is not in any way entitled to avoid paying punitive interest amounts if there is a question about a provider's license.  Let us further assume that an acupuncturist (who under Title 1A of the Health Occupations Article is a health care professional entitled to submit claims for certain services) submits an otherwise clean claim for cardiac surgery.  According to Feldman's reading of the law, the third party payor would have to pay the claim and then pursue the acupuncturist for recovery unless it turned out that the acupuncturist was also a licensed surgeon.  The law does not countenance such  ridiculous results.

Second, the fact that Feldman's still has not shown which claims are under its contract and which are not plays into this analysis.  The contract on which Feldman's relies only covers services "within the scope of [Feldman's] professional license or certification…."  DE 5-2 ¶ 9.  No contractual obligation could arise on CareFirst's part until it was understood that Feldman's was in fact acting within the scope of its professional license.  As to the pre-December 11, 2008 claims, that did not happen until the Board of Pharmacy rendered its opinion.

D.  The Question Of Whether Feldman's Needed An RSA Was Reasonable

Feldman's asserts that "CareFirst did not ever have a reasonable belief that Feldman's needed an RSA…."  DE 120 at 20.  That is a remarkable statement to make in the face of the

6

communications between the parties.  CareFirst will simply say this – if its belief was

unreasonable as to Feldman's need for an RSA, so was the belief of OHCQ.  *See*  Ex. B to de

Gravelles Decl.

    E.  Feldman's Was Treated No Differently Than Other Pharmacies Providing HIT

    Feldman's tries to claim it was singled out among other pharmacies.  DE 120 at 10

(stating "no specialty pharmacy in the state of Maryland ever had an RSA license.")  It was not.

In the CareFirst network, specialty pharmacies and home infusion therapy ("HIT") providers

were and are different things.  DE 117-1 at 9.  Moreover, all other pharmacies that have a HIT

contract with CareFirst also have an RSA or, in the case of one pharmacy, an exemption.  DE

117 ¶ 35.  Feldman's blithely ignores that evidence and instead insists that it was not treated the

same as any other provider.

    F.  CareFirst Will Dispute Feldman's Material Facts When Appropriate

    Feldman's claims that "CareFirst does not dispute" certain facts.  DE 120 at 7.  As the

Court is well aware, if and when CareFirst responds to Feldman's 176 material and immaterial

facts is the subject of a pending motion.  DE 107.  At the proper time, CareFirst will respond as

directed by the Court.

    II.     FELDMAN'S FAILS TO SHOW THAT A TRIABLE ISSUE OF FACT EXISTS
           ABOUT WHETHER IT USED AN IMPROPER FORM TO SUBMIT ITS
           CLAIMS

    CareFirst did not raise the issue of the Health Care Finance Administration ("HCFA")

1500 vs. the Universal Prescription Drug Claim Form for purposes of trying to evade any

payment responsibility.  DE 110 at 22.  Rather, the point is that Feldman's use of the HCFA

1500 shows that everyone, including Feldman's, was operating under the assumption that what

Feldman's was doing was acting as a home infusion therapy provider, and not as  a simple

pharmacy filling prescriptions.

Feldman's only real argument about the fact that it never submitted a clean claim because it failed to use the proper form under Maryland law (the Universal Prescription Claim Form) is that CareFirst is equitably estopped from requiring Feldman's to use the proper form, because CareFirst waived the requirement and then retracted the waiver. DE 24 at 24-25. Although CareFirst acknowledges that the case is unlikely to rise or fall on this issue, it is worth noting that Feldman's legal analysis is fundamentally flawed.

A private party cannot waive another party's obligations under the law. *Will v. Dept. of Transp.*, 641 A.2d 624, 626, n.2 (Pa.Commw. 1994) ("the law itself cannot be waived"); *Haghighi v. Russian-Amer. Broadcasting Co.*, 173 F.3d 1086, 1088 (8th Cir. 1999); *Ricke v. Armco, Inc.*, 882. F. Supp. 896, 901 (D. Minn. 1995). CareFirst cannot waive Maryland's legal requirement that Feldman's submit prescription drug claims on the Universal Prescription Drug Claim Form. That is an obligation that Feldman's, as a licensed Maryland pharmacy, owes to the State of Maryland.

Additionally, "[w]aiver requires evidence of a voluntary and intentional relinquishment or abandonment of a known right…." *Haghighi*, 173 F.3d at 1088. The entire record in this case shows that if anything, exactly what Feldman's was doing and what law governed it (whether the law of residential services agencies or that of pharmacies) was very much an open question.

Finally, Feldman's ignores the "reliance" prong of the equitable estoppel inquiry. Feldman's, a licensed pharmacy, should have known that if it was only dispensing Factor VIII drugs, it needed to submit claims for that service on the proper form. Any reliance by Feldman's on representations by a third party, other than perhaps counsel, cannot be reasonable.

III.    PUBLIC POLICY WEIGHS STRONGLY AGAINST AWARDING
        FELDMAN'S THE INTEREST THAT IT SEEKS

In the end, the Court will have to choose between two realities.  One is the reality in which  Feldman's, traditionally a DME provider, approached CareFirst, and wanted to become a participating provider for Factor VIII.  In this reality, CareFirst and Feldman's engaged in a dialog about what Feldman's needed to do, including getting an RSA.  As part of this process, as well as part of Feldman's re-credentialing process for DME, Feldman's approached the State of Maryland and it was determined – based on what Feldman's represented at the time – that Feldman's needed an RSA.  In fact, Feldman's may not have been going into homes to provide HIT, although it still needed an RSA for the DME portion of its business.  The uncertainty about the licensing requirements, fed in no small part by Feldman's itself, led to the instant dispute.  In an effort to resolve this dispute, CareFirst accepted Feldman's revised description of its services, and decided to pay the claims once it received an advisory opinion that it was proper to do so.

The other reality is that painted vividly by Feldman's allegations of fraud (DE 120-3 at 5, ¶ 12), "bogus impediments" and assertions (*id.* at 6, ¶ 12, DE 120-4 at 3, ¶ 9) and other "improper behavior".  DE 120-3 at 6 ¶ 14.  It is also a reality that, if true, can be proved only by ignoring the evidence generated at or near the time of the events, and relying solely on *ex-post facto* declarations of Feldman's employees.

If the Court accepts Feldman's reality and forces CareFirst to pay exorbitant interest, the message to any third party payor in Maryland is loud and clear.  Once a claim has been pended, it is not worth the effort to reconsider it.  The risk is simply too high.  Simply go with the denial and work it out through the litigation process.  Ultimately the denial might prove to be correct, and the downside of reconsidering and paying is simply too high.

## CONCLUSION

For the foregoing reasons, CareFirst respectfully requests that the Court DENY Plaintiff's

Motion for Summary Judgment in its entirety, and GRANT CareFirst's Motion for Partial

Summary Judgment.

April 28, 2011                              Respectfully submitted,

                                                    /s/

Patrick P. de Gravelles, Bar No. 29245
A. Dean Stocksdale, Bar No. 28416
CareFirst BlueCross BlueShield
Litigation General Counsel
1501 S. Clinton Street
Baltimore, Maryland 21224
202-680-7457 (voice) (Mr. de Gravelles)
202-680-7620 (fax) (Mr. de Gravelles)
410-528-7923 (voice) (Mr. Stocksdale)
410-720-5847 (fax) (Mr. Stocksdale)
*Attorneys for Defendant CareFirst, Inc.*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| FELDMAN'S MEDICAL CENTER PHARMACY, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:10-cv-00254WDQ |
| v. | ) ) | |
| CAREFIRST, INC., | ) ) | |
| Defendant. | ) | |

## DECLARATION OF PATRICK de GRAVELLES IN SUPPORT OF REPLY MEMORANDUM

I, Patrick de Gravelles, declare as follows:

1. I am over the age of 18 and if called upon to do so, I could and would testify competently to the matters contained herein.
2. In the instant matter, I am counsel of record, along with A. Dean Stocksdale, for CareFirst, Inc.
3. For purposes of this declaration, I will refer to all of the CareFirst entities collectively as "CareFirst."
4. By letter dated April 14, 2011, counsel for Feldman's Medical Center Pharmacy, Inc. ("Feldman's") sent me a supplemental production of documents. A true and correct copy of the documents is attached hereto as Exhibit A. The documents are bates labeled M 01778 through M 01785.
5. On January 21, 2010, I took the deposition of Amy Adams, an employee of Feldman's.
6. A true and correct copy of certain portions of Ms. Adam's deposition transcript, along with Exhibits 1, 2, 3 and 5 to that transcript is attached hereto as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 28, 2011                    _____/s/_____

                                          Patrick de Gravelles

# Exhibit A



**FactorHealth**
Management, LLC

March 26, 2008

<u>VIA FEDEX DELIVERY</u>

Ms. Isabel Thornton
CareFirst Blue Cross Blue Shield
10455 Mill Run Circle
Mail Stop: CG-51
Attn: Institutional Contracting - DME
Owings Mills, MD  21117

Dear Isabel:

It was a pleasure to speak with you today regarding re-credentialing Feldman's Medical Center Pharmacy located at 11055 Little Patuxent Parkway, Columbia, MD 21044.

As outlined in our conversation today, Factor Health Management owns the above-mentioned pharmacy, which was purchased on October 24, 2007.   Factor Health Management is a Joint Commission on Accreditation of Healthcare Organizations (JCAHO) accredited company and is in the process of seeking additional JCAHO accreditation for Feldman's Medical Center Pharmacy for Durable Medical Equipment. You indicated that you, as a company, are aware that JCAHO credentialing is a lengthy process.

We will submit the additional documentation that is required to you, which was previously outlined in the April 21, 2008 deadline.

Sincerely,

Janet R. Gardner
Senior Vice President
Clinical Operations and Patient Services

cc:    Mr. M. Bruce Edwards

CONFIDENTIAL                                                    M 01778

FedEx Ship Manager - Print Your Label(s)                                          Page 1 of 1





Stephanie McLane
Factor Health Management, LLC
7700 Congress Avenue, Suite 3109

Boca Raton, FL 33487

ActWgt: 1 LB
System#: 909261SRNET8010
Account#: S *********

Delivery Address Bar Code

SHP TO: 561-314-1700         BILL SENDER
**Isabel Thornton-Instit. Contracting**
**CareFirst Blue Cross Blue Shield**
**10455 Mill Run Circle**
**Mail Stop: CG-51**
**Owings Mills, MD 21117**

Ref #      FHM
Invoice #
PO #
Dept #

TRK#                                          THU - 27MAR          A1
[0201]  7918 7355 7520                STANDARD OVERNIGHT

**EG MTNA**

**21117**
MD-US
**BWI**

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning: Use only the printed original label for shipping.** Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com. FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

Global Home | FedEx Mobile | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map
This site is protected by copyright and trademark laws under US and International law. All rights reserved. © 1995-2008 FedEx

CONFIDENTIAL                                                        M 01779



**FactorHealth**
Management, LLC

April 18, 2008

VIA FEDEX DELIVERY

Ms. Isabel Thornton
CareFirst Blue Cross Blue Shield
10455 Mill Run Circle
Mail Stop: CG-51
Attn: Institutional Contracting – DME
Owings Mills, MD 21117

Good Morning Isabel,

I have attached the completed re-credentialing form for DMEPOS providers.

Also attached please find copies of the following current documentation that you have
requested prior to the April 21, 2008 deadline:

- NSC document indicating CMS's approval and assignment of your Medicare
  supplier numbers
- Accreditation letter from the Joint Commission (JCAHO) regarding application
  for accreditation for Durable Medical Equipment – Prosthetics and Orthotics
- Business license
- Certificate of liability insurance certificate with CareFirst named as certificate
  holder
- National Provider Identifier (NPI) notification
- Sales tax license
- IRS W-9 form
- Completed re-credentialing form

As previously indicated in my letter dated March 26, 2008, we are applying for Joint
Commission Accreditation for pharmacy dispensing services as well as Durable Medical
Equipment to include the Orthotics and Prosthetics category. In the enclosed packet, I
have also included written documentation from JCAHO that confirms the application for
accreditation for Feldman's Medical Center.

Sincerely,

Janet R. Gardner
Senior Vice President
Clinical Operations and Patient Services

Cc: M. Bruce Edwards

7700 Congress Avenue, Suite 3109 • Boca Raton, FL 33487 • 1-866-322-3461 • (561) 314-1700 • Fax (561) 981-8804
www.factorhealth.com



FACTORHEALTH

7700 Congress Avenue, Suite 1113
Boca Raton, FL 33487
Ph: 561-995-8480
Fax: 561-995-9162

# FACSIMILE TRANSMITTAL

| To: | Ms. Isabel Thornton | | |
|---|---|---|---|
| | CareFirst Blue Cross Blue Shield | | |
| From: | Janet R. Gardner, SVP, Clinical Operations and Patient Services | | |
| Fax: | (410) 872-4106 | Pages: | 2 (including cover sheet) |
| Phone: | | Date: | April 21, 2008 |
| Re: | Revised W-9 Form | CC: | |

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

**NOTE:**
This facsimile contains privileged and confidential information intended for the use of the individual, or entity named above. If the receiver of this facsimile is not the intended recipient, or the employee, or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender by telephone, and return the original facsimile to the above address via U.S. Postal Service. Thank you in advance for your cooperation.

● Comments:

Isabel,

Please see the attached, revised W-9 form for Feldman's Medical Center as part of our application package for the re-credentialing process for DMEPOS providers.

Please feel free to contact me if you have any questions or need any additional information.

Thank you.

7700 Congress Suite 1113
Boca Raton, FL 33487-1352
1-800-223-7151

CONFIDENTIAL

M 01781



April 21, 2008

Ms. Isabel Thornton
CareFirst Blue Cross Blue Shield
10455 Mill Run Circle
Mail Stop: CG-51
Attn: Institutional Contracting – DME
Owings Mills, MD 21117

Dear Isabel,

I have enclosed the completed, revised W-9 form for Feldman's Medical Center as part of our application package for the re-credentialing process for DMEPOS providers.

Previously, it was inadvertently sent without the full information.

I apologize for any inconvenience this may have caused. Please feel free to contact me if you have any questions or concerns.

Sincerely,

Janet R. Gardner
Senior Vice President
Clinical Operations and Patient Services

Cc: M. Bruce Edwards

7700 Congress Avenue, Suite 3109 • Boca Raton, FL 33487 • 1-866-322-3461 • (561) 314-1700 • Fax (561) 981-8804
www.factorhealth.com

CONFIDENTIAL

M 01782

P.

\* \* \* Communication Result Report ( Apr. 21. 2008  3:04PM ) \* \* \*

P.
2)

Date/Time: Apr. 21. 2008  3:03PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 5083 Memory TX | 14108724106 | P. 3 | OK | |

```
Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection
  E. 5) Exceeded max. E-mail size
```

FACTORHEALTH

7700 Congress Avenue, Suite 1113
Boca Raton, FL 33487
Ph: 561-995-8400
Fax: 561-995-9162

FACSIMILE TRANSMITTAL

To: Ms. Isabel Thornton

CareFirst Blue Cross Blue Shield

From: Janet R. Gardner, SVP, Clinical Operations and Patient Services

Fax: (410) 872-4106        Pages: 2 (including cover sheet)

Phone:                      Date: April 21, 2008

Re: Revised W-9 Form        CC:

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

NOTE:
This facsimile contains privileged and confidential information intended for the use of the individual, or entity named above. If the receiver of this facsimile is not the intended recipient, or the employee, or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender by telephone, and return the original facsimile to the above address via U.S. Postal Service. Thank you in advance for your cooperation.

● Comments:

Isabel,

Please see the attached, revised W-9 form for Feldman's Medical Center as part of our application package for the re-credentialing process for DMEPOS providers.

Please feel free to contact me if you have any questions or need any additional information.

Thank you.

7700 Congress Suite 1113
Boca Raton, FL  33487-1352
1-800-322-7151

CONFIDENTIAL                                    M 01783

**Janet Gardner**

| | |
|---|---|
| **From:** | Janet Gardner |
| **Sent:** | Wednesday, April 30, 2008 11:51 AM |
| **To:** | Amy Adams; Rebecca Klaus |
| **Cc:** | Jennifer Martin |
| **Subject:** | FW: FELDMANS PHARMACY DME |

Good Morning Amy,
I left you a voice message this morning regarding my recent phone call with Isabel at Carefirst.   She mentioned that she thought that she sent the preceeding email, outlining additional required information,to you on 4/25. Did you happen to receive it?

As an update to the RSA, she is checking with someone in the office to see if it will be a requirement for us. I had mentioned to her, that it was a very rare occurance and that it was for delivery only. I also her asked her if an item were to be sent via Fedex would that require an RSA.

Based upon her feedback, if we continue to pursue the RSA (As of yesterday, Willard thought that we should) we would need to supply to Isabel the date that the application was submitted as well as the anticipated date of completion to her as soon as possible.

Thanks,
Janet


*Janet R. Gardner, RN, BSN*
*Senior Vice President of Clinical Operations & Patient Services*

────────────────

Factor Health Management

Office (866) 322-FHM1 x223
Cell (954) 854-4927
Fax (561) 981-8804

Florida Office:
7700 Congress Avenue – Suite 3109
Boca Raton, FL 33487

**Confidentiality Notice:**
This message may contain privileged or confidential information or attachments. It is intended for the exclusive use of the persons and entities to which it is addressed. If you are not an intended recipient, please notify the sender by return email that you received it in error; do not print the message and attachments; and immediately delete all copies from your computer files. Thank You.


**From:** Isabella.Thornton@Carefirst.com [mailto:Isabella.Thornton@Carefirst.com]
**Sent:** Wednesday, April 30, 2008 11:29 AM
**To:** Janet Gardner
**Subject:** Fw: FELDMANS PHARMACY DME


4/30/2008

CONFIDENTIAL

M 01784

---- Forwarded by Isabella Thornton/MD/CareFirst on 04/30/2008 11:28 AM -----

Isabella Thornton/MD/CareFirst

04/25/2008 09:28 AM

To aadams@feldmanspharmacies.com

cc

Subject FELDMANS PHARMACY DME

Good morning,

         We have received your Recredentialing packet, but at this time it will remain incomplete until we receive the following information. If you have the following documents please fax (301-470-3192)  them to us as soon as possible, DEA, CDS, Pharmacy License and your Residential Service Agency License. If for any reason you do not have these documents please send an explanation or justification.

Thank you
Isabella Thornton
*****************************************************************
Unauthorized interception of this communication could be a
violation of Federal and State Law. This communication and
any files transmitted with it are confidential and may contain
protected health information. This communication is solely
for the use of the person or entity to whom it was addressed.
If you are not the intended recipient, any use, distribution,
printing or acting in reliance on the contents of this message
is strictly prohibited. If you have received this message
in error, please notify the sender and destroy any and all copies.
Thank you.
*****************************************************************

4/30/2008

CONFIDENTIAL

M 01785



CONFIDENTIAL

M 01786



CONFIDENTIAL

M 01787

**Janet Gardner**

From:          Janet Gardner
Sent:          Wednesday, June 18, 2008 5:49 PM
To:            Janet.Chavarria@carefirst.com
Cc:            Isabella.Thornton@Carefirst.com
Subject:       RE: Feldman's Medical Center Pharmacy Inc.
Attachments:   jcaho inclusion.pdf

Importance:    High


June 18, 2008

Good Afternoon Ms.Chavarria,

     In response to your email below, I am providing you with the following information:

1) The Residential Service Agency License:

We are in the process of submitting the RSA application and completing the RSA requirements.
Initially, the requirement for licensure was unclear as Feldman's Medical Center is a retail
pharmacy.  We anticipate that due to the volume of RSA applications that this process would
be completed within the next several months.

2)  JCAHO accreditation:

In previous written correspondence with your organization, dated March 26, 2008, sent to
Isabel Thornton, the following information was supplied to your organization; "Factor Health
Management owns Feldman's Medical Center Pharmacy, which was purchased on October 24, 2007.
Factor Health Management is a Joint Commission on Accreditation of Healthcare
Organizations(JCAHO)accreditation company and is in the process of seeking additional JCAHO
accreditation for Feldman's Medical Center Pharmacy for Durable Medical Equipment as well as
pharmacy dispensing services."
     Additionally, correspondence directly from the Joint Commission on Accreditation, dated
April 18, 2008, was previously sent to Isabel Thornton,informing your organization that
Feldman's Medical Center was applying for JCAHO accreditation.  This correspondence is also
contained for your review in the attachment of this email.


     We continue currently to be in the process of working with the Joint Commission
regarding accreditation for Feldman's Medical Center. Feldman's Medical Center is
functionally and organizationally integrated with Factor Health Management and thus will be
included as a surveyable site within the Joint Commission's surveyable time frame for the
organization.
     The Joint Commission has indicated that the survey for Feldman's Medical Center should
take place within the next six months, approximately.  Also indicated in previous
conversations and correspondence with Isabel Thornton, it was indicated to me that your
organization was aware that the Joint Commission's process for accreditation is a lengthy
one.

Please let me know should you require anything additional.

Regards,

Janet R. Gardner, RN, BSN
Senior Vice President of Clinical Operations & Patient Services

                                           1

M 01788

Factor Health Management

Office (866) 322-FHM1 x223
Cell (954) 854-4927
Fax (561) 981-8804

Florida Office:
7700 Congress Avenue - Suite 3109
Boca Raton, FL 33487

Confidentiality Notice:
This message may contain privileged or confidential information or attachments. It is
intended for the exclusive use of the persons and entities to which it is addressed. If you
are not an intended recipient, please notify the sender by return email that you received it
in error; do not print the message and attachments; and immediately delete all copies from
your computer files. Thank You.


-----Original Message-----
From: Janet.Chavarria@carefirst.com [mailto:Janet.Chavarria@carefirst.com]
Sent: Tuesday, June 10, 2008 10:12 AM
To: Janet Gardner
Cc: Isabella.Thornton@Carefirst.com
Subject: Feldman's Medical Center Pharmacy Inc.


Ms. Gardner:

The credentialing documents for Feldman's Medical Center Pharmacy Inc. are incomplete as
follows:

    Residential Service Agency License (copy needed)
    Present status of JCAHO accreditation

Can you help by providing this information or is there someone else in Feldman's Medical
Center Pharmacy, Inc. that we should contact?  We look forward to completing the review of
your credentialing file.  Please contact me personally with questions or concerns.  Thank
you.


Janet L. Chavarria
Institutional Credentialing
CareFirst BlueCross BlueShield Networks Management Provider Information & Credentialing
Department PHONE 410.872.3532 FAX 410.505.2414


*****************************************************************************
Unauthorized interception of this communication could be a violation of Federal and State
Law. This communication and any files transmitted with it are confidential and may contain
protected health information. This communication is solely for the use of the person or
entity to whom it was addressed.
If you are not the intended recipient, any use, distribution, printing or acting in reliance
on the contents of this message is strictly prohibited. If you have received this message in
error, please notify the sender and destroy any and all copies.
Thank you.
*****************************************************************************

2


CONFIDENTIAL

M 01789

**Janet Gardner**

| | |
|---|---|
| **From:** | Janet Gardner |
| **Sent:** | Tuesday, July 22, 2008 2:54 PM |
| **To:** | 'Janet.Chavarria@carefirst.com'; Isabella.Thornton@Carefirst.com |
| **Cc:** | Amy Adams; 'Robert Gardner'; Jennifer Martin |
| **Subject:** | FW: JCAHO accreditation |
| | |
| **Importance:** | High |
| | |
| **Attachments:** | jcaho accreditation feldman's.pdf; rsa inquiry letter.pdf |

 

jcaho accreditation       rsa inquiry
feldman's....       letter.pdf (173 KB...

Good Afternoon Isabella,

It was nice to speak to you earlier today.

As promised, I have attached our JCAHO accreditation status regarding Feldman's Medical Center.

I have also attached a copy of the letter that was previously sent to the state regarding our inquiry as to whether or not RSA applies to us.

You will also be provided a copy of the RSA application by the July 31st deadline, as we discussed today.

Please let me know if you require anything additional.  Your efforts are greatly appreciated.

Regards,

Janet R. Gardner, RN, BSN
Senior Vice President of Clinical Operations & Patient Services
_____ Factor Health Management

Office (866) 322-FHM1 x223
Cell (954) 854-4927
Fax (561) 981-8804

Florida Office:
7700 Congress Avenue — Suite 3109
Boca Raton, FL 3348Janet

Confidentiality Notice:
This message may contain privileged or confidential information or attachments. It is intended for the exclusive use of the persons and entities to which it is addressed. If you are not an intended recipient, please notify the sender by return email that you received it in error; do not print the message and attachments; and immediately delete all copies from your computer files. Thank You.

-----Original Message-----
From: Janet [mailto:jgardner@factorhealth.com]
Sent: Tuesday, July 22, 2008 2:28 PM
To: Janet Gardner
Subject:

This E-mail was sent from "3245EXEC" (Aficio 3245C).

1

                                          M 01790

# Exhibit B

1

IN THE CIRCUIT COURT FOR BALTIMORE COUNTY

-------------------------------:

**ORIGINAL**

FELDMAN'S MEDICAL CENTER             :

PHARMACY, INC.,                       :

        Plaintiff,           :

    vs.                            : Case No.

CAREFIRST, INC.,                      : 03-C-09-006257

        Defendant.           :

-----------------------------:

               Columbia, Maryland

          Thursday, January 21, 2010

Deposition of:

        AMY M. ADAMS,

called for oral examination by counsel for

Defendant, pursuant to notice, at CareFirst

BlueCross & BlueShield, 6731 Columbia Gateway Drive,

Columbia, Maryland, 21046, before Robert Michael

Jakupciak, RPR, of Capital Reporting Company, a

Notary Public in and for the State of Maryland,

beginning at 10:00 a.m., when were present on behalf

of the respective parties:

## Capital Reporting Company
## Adams, Amy M. 01-21-2010

4

```
1              P R O C E E D I N G S

2    Whereupon,

3              AMY M. ADAMS,

4    called as a witness, and having been first duly

5    sworn, was examined and testified as follows:

6              (Adams Exhibit Numbers 1, 2, 3, 5, 6,

7              7 were premarked for identification.)

8         EXAMINATION BY COUNSEL FOR DEFENDANT

9    BY MR. DE GRAVELLES:

10      Q    Good morning, Ms. Adams.  Can you state

11   your name for the record, please?

12      A    Sure.  Amy Marlene Adams.

13      Q    My name is Patrick de Gravelles, and with

14   me is Dean Stocksdale, and I'm with CareFirst, and

15   we are here for your deposition today; is that

16   correct?

17      A    That's correct.

18              MR. DE GRAVELLES:  And I'll let Mr. Becker

19   introduce himself.

20              MR. BECKER:  I'm Jordan Becker, from

21   Paduano & Weintraub, and I represent the plaintiff

22   in this case and also represent Ms. Adams today.
```

58

1   If you could look at that letter and let me know if

2   you recognize it?  Do you recognize the letter?

3        A    Yes, I sure do.

4        Q    Did you write this letter?

5        A    Yes, I did.

6        Q    Can you tell me what prompted you to write

7   this letter?

8        A    To the best of my recollection, Janet

9   Gardner told me that Blue Cross was saying that we

10  needed an RSA, and she wasn't sure and I certainly

11  wasn't sure because I really hadn't heard of the RSA

12  license before, and so she told me who to write this

13  to, and I did.

14       Q    Now, I notice in here that you don't

15  mention anything about factor products, do you?

16       A    I don't.  And, you know -- I don't.

17       Q    Was CareFirst, to your knowledge, telling

18  Feldman's that it needed an RSA for factor products

19  or for DME?

20       A    I don't know.

21       Q    At the time though Feldman's was

22  dispensing factor; right?

59

1     A     Yes.

2     Q     Why wasn't factor mentioned in here?

3     A     That's because my point of reference was

4  the equipment.  I mean that -- that's why.  I mean I

5  just didn't even think of it.  And I guess also

6  because factor is shipped, I just didn't even -- it

7  just didn't occur to me.  I really had little to do

8  with factor.

9     Q     And Ms. Gardner didn't mention that

10  CareFirst wanted the RSA for the factor shipments?

11     A     Apparently, not.  Not that I can remember.

12     Q     Do you remember the date on which

13  Feldman's first approached CareFirst about entering

14  into a contract for the sale or to cover factor

15  products?

16     A     No, I don't.

17           MR. BECKER:  Objection.  Okay.  You can

18  answer.  My objection was that there is nothing in

19  the record that says that they ever did approach

20  factor.  She says she doesn't know.

21     A     I have no idea.

22     Q     Do you know how the State responded to

60

1    this letter, Exhibit 1?

2        A    I never saw a response, so, no.  I don't

3    remember seeing a response.  I shouldn't say I

4    never.  I don't remember seeing a response.

5        Q    And these are out of order because we got

6    some of these documents late last night and we had

7    already ordered them, but I'm going to hand you what

8    has been premarked Adams Exhibit 5.  I hand a copy

9    to your counsel as well.  Tell me after you've had a

10   chance to review that whether you recognize that

11   letter?

12       A    Yes.

13       Q    And what's that letter?

14       A    I recognize this from the State.

15       Q    Can you tell me what it is?

16       A    Sure.  It's telling us that they want us

17   to send them a copy of the RSA license so that we

18   can continue having our provider number.

19       Q    And was this in response to your letter

20   which was marked as Exhibit 1?

21       A    No.

22       Q    It wasn't?

## Capital Reporting Company
### Adams, Amy M. 01-21-2010

61

1     A     No.

2     Q     What was it in response to?

3     A     I don't think it was in response to

4   anything.  I think that they -- well, yes, of

5   course, I know.  We had applied for a Medicaid

6   provider number, and in the application it asked us

7   if we had an RSA license or not, check yes or no.

8   And I remember checking no and I remember writing a

9   note saying that we were working on getting it,

10  working on -- working on getting it.  So I think

11  that this was in response to that.

12          They did give us a provider number.  And

13  then very soon after we got this.  And then I wrote

14  them -- I'm pretty sure I wrote them back.

15    Q     The May 12, 2008 letter, which was Exhibit

16  1, at that time you had not applied for an RSA or

17  Feldman's had not applied for an RSA; right?

18    A     Right.  I don't think so.  You know what?

19  I can't tell you that.  Because I didn't put in the

20  applications for the RSA.  So I cannot tell you

21  that.

22    Q     Well, if you had applied for the RSA,

62

1  would you be writing asking if you needed one?

2      A    You know, when you say you --

3      Q    I mean Feldman's.

4      A    I know.  I wouldn't, but I don't know what

5  other people had been doing.

6      Q    All right.  When you applied for the

7  Medicaid number, you said you wrote a note saying

8  that you were getting an RSA?

9      A    No.  Working.  Working on that.

10      Q    What did you mean by working on it?

11      A    Well, that was, you know, again, Janet

12  Gardner was dealing with that part of it.  And she

13  was working on trying to figure out whether we

14  needed it.  So I let them know that we were working

15  on this, because we were.

16      Q    Was the wording that you were working on

17  figuring out whether you needed it or whether you

18  were working on getting it?

19          MR. BECKER:  Objection.  Wording on what?

20          MR. DE GRAVELLES:  On the application.

21  She said she wrote a note on it.

22          MR. BECKER:  Oh, okay.

Capital Reporting Company
Adams, Amy M. 01-21-2010

63

1      A    I don't remember.  I don't.

2      Q    Who came up with the final wording on the

3 Medicaid application; you or Janet Gardner?

4      A    It was probably Bob.

5      Q    Bob Gardner?

6      A    Bob.

7      Q    Did you sign your name to it?

8      A    I don't think so.  I didn't sign anything

9 for the applications, no.

10     Q    Does Feldman's still have a copy of that

11 application; do you know?

12     A    I would think.  They should.

13     Q    I'm going to put before you what's been

14 premarked as Adams Exhibit 2.  I hand a copy to your

15 counsel.

16     A    Okay.  Yes.

17     Q    Do you recognize this letter?

18     A    Yep.

19     Q    Can you tell me what it is?

20     A    Sure.  This is in response to the May 23rd

21 letter.

22     Q    Just to be clear, you don't ever recall

64

1   getting a response to the May 12, 2008 letter?

2       A    I don't remember that.  I don't.  It

3   doesn't mean we didn't, I didn't.  But I don't

4   remember that.

5       Q    All right.  So the June 13 letter is in

6   response to the May 28th letter?

7       A    Twenty-third.

8       Q    I'm sorry.  Twenty-third letter; correct?

9       A    Uh-huh.

10      Q    Do you see in the second paragraph of

11  Exhibit 2, do you see that it says that Feldman's

12  completed a Maryland Medical Assistance DMS/DME and

13  Oxygen Residential Services Agency Survey Form?

14      A    Yes.

15      Q    And do you see that it says, "and we also

16  wrote a note indicating that we are currently

17  working on obtaining our Residential Services Agency

18  License"?  Do you see that?

19      A    Yes.

20      Q    Is that the note you were referring to?

21      A    Yes.

22      Q    All right.  So according to this letter,

65

1   the note said you were actually working on or

2   Feldman's was working on obtaining the Residential

3   Services Agency License; right?

4        A    Yep.

5        Q    When, in fact, it, as far as you know, had

6   not yet applied for one; correct?

7        A    No, that's not correct.  I don't know.  I

8   don't know.

9        Q    Okay.  Do you know whether -- when you

10  wrote the letter, Exhibit 1, on May 12, 2008, you

11  don't know whether Feldman's had applied for an RSA

12  yet?

13       A    I don't.

14       Q    Okay.  We have the application.

15       A    Okay.

16       Q    And I'm going to tell you right now that

17  it postdated the May 12th letter.

18       A    Okay.

19       Q    All right.

20            MR. BECKER:  Why don't you show it to her.

21            MR. DE GRAVELLES:  Because I don't have it

22  with me.

Capital Reporting Company
Adams, Amy M. 01-21-2010

66

1           MR. BECKER:  Ah.

2           MR. DE GRAVELLES:  It's in Bostwick's

3    deposition.  It was well discussed.

4    BY MR. DE GRAVELLES:

5       Q    The May 12th letter, did that postdate the

6    Maryland Medical Assistance DMS/DME and Oxygen

7    Residential Services Agency Survey Form referred to

8    in the June 13th letter?

9       A    Did it postdate?

10      Q    My question is this.  I'm trying to put

11   events in order.

12      A    Right.  Sure.

13      Q    It appears to me that the May 12th, 2008

14   letter was written at a time when no RSA application

15   had been submitted.

16          MR. BECKER:  Objection.

17      A    Okay.

18          MR. DE GRAVELLES:  Can I finish?

19          MR. BECKER:  I thought you were.

20          MR. DE GRAVELLES:  No.  I'm not finished.

21   It's not a question.

22

Capital Reporting Company
Adams, Amy M. 01-21-2010

67

1  BY MR. DE GRAVELLES:

2      Q    Certainly the application that we have

3  postdates the May 12th, 2008 letter.  Then the June

4  13, 2008 letter is in response to a letter that the

5  State issued in May as well, which does not

6  reference any existing RSA application.  Okay?

7      A    Uh-huh.

8      Q    The letter that you wrote on June 13th,

9  2008 references an application, or rather an agency

10  survey form; right?

11      A    Right.

12      Q    Which you referred to as an application

13  earlier.

14      A    Okay.

15      Q    My question is, that application, do you

16  know relative to these letters when it was

17  submitted?

18      A    I don't know.  I don't.

19      Q    But, if it was submitted prior to the time

20  that the RSA application was submitted, then the

21  statement -- I'm trying to figure out who came up

22  with the wording that Feldman's was in the process

Capital Reporting Company
Adams, Amy M. 01-21-2010

68

1   of obtaining an RSA.  Do you know who came up with

2   that wording?

3           MR. BECKER:  Objection.  The wording --

4   are you talking about the wording in this letter?

5           MR. DE GRAVELLES:  Yes.

6           MR. BECKER:  The wording says we are

7   currently working on obtaining our residential

8   service --

9           MR. DE GRAVELLES:  No.  No.  No.  The

10  letter says we wrote a note indicating that we are

11  currently working on obtaining our Residential

12  Services Agency License.

13          MR. BECKER:  Right.

14          MR. DE GRAVELLES:  That indicates that the

15  note was written on what Ms. Adams has called the

16  application.

17  BY MR. DE GRAVELLES:

18      Q    My question is when it was written on the

19  application, at that time that it was written on the

20  application, isn't it true that, in fact, Feldman's

21  wasn't even sure whether it needed an RSA or not?

22          MR. BECKER:  Objection.  You can answer.

69

1    A    Okay.  I believe so.  But, but it doesn't

2  mean that they weren't working on it even though

3  there was a question about it.

4    Q    Okay.  Fine.  On May 12th, 2008 when you

5  wrote this letter, Exhibit 1 --

6    A    Yes.

7    Q    -- as far as you were concerned, Feldman's

8  did not know whether or not it needed an RSA; right?

9    A    Correct.

10    Q    And you don't know of any work being done

11  on actually obtaining an RSA prior to the May 12th,

12  2008 date, do you?

13    A    I'm not aware of what they were doing.

14    Q    Who would know when Feldman's -- go ahead.

15    A    Finish.

16    Q    When Feldman's first started working on

17  the RSA application?

18    A    Janet and Bob Gardner.

19    Q    All right.  You know, I think I misspoke

20  actually earlier.  I'm going to hand to you what's

21  been marked as Adams Exhibit 3.  And I'm going to

22  ask you if you recognize that?

Capital Reporting Company
Adams, Amy M. 01-21-2010

70

1    A    I don't recognize this.

2    Q    Do you see --

3    A    I wasn't -- I wasn't --

4    Q    Who is Steve Schneider?

5    A    Steve was the president of Factor Health

6  at the time.

7    Q    Do you know -- this appears -- I'm not

8  going to ask you whether it is or not, because you

9  said you don't recognized it.  But other than this

10 letter, which appears to be the cover letter for an

11 RSA application, are you aware of any RSA

12 application that was submitted by Feldman's?

13   A    I'm not aware.

14   Q    Who is Cynthia -- and I don't know if I

15 can pronounce this right -- Bavry-Smith?  B-A-V-R-Y

16 hyphen Smith?

17   A    Her name is familiar, but I don't

18 remember.  What's the context?

19   Q    She is listed as an administrator at

20 Feldman's Pharmacy at Chartwell.

21   A    What year?

22   Q    In 2008.

## Capital Reporting Company
### Adams, Amy M. 01-21-2010

71

```
1       A    I just don't recall.

2       Q    I'm going to hand you what's been

3   premarked as Adams Exhibit 6.

4       A    Okay.

5       Q    If you could take a look at that and let

6   me know if you recognize it?

7       A    I don't remember this.  I just don't

8   remember it.

9       Q    Did you search for any documents with

10  regard to this case at any time?

11      A    No.  I found -- yeah.  I looked for

12  Exhibit 2 and Exhibit 5.

13      Q    Did you find them?

14      A    Uh-huh.

15      Q    Okay.  That's a yes?

16      A    Yes.  Yes.

17      Q    Did you look through your e-mails?

18      A    No.  In fact, I don't even have access to

19  that anymore.  When I left the company, they went

20  away.

21      Q    Do you use e-mail now at work?

22      A    No.
```

Capital Reporting Company
Adams, Amy M. 01-21-2010

72

1     Q     I'm going to try jog your memory.

2     A     Okay.

3     Q     And if it doesn't work, that's fine.

4     A     Okay.

5     Q     I want you to look at what I marked as

6  Exhibit 2.

7     A     Okay.

8     Q     Do you see in the first paragraph there it

9  says that Feldman's Medical Center Pharmacy, Inc.

10  received correspondence from you, being the Medical

11  Care Program Specialist, Ms. Radu, at the State of

12  Maryland, dated May 23rd, 2008, and postmarked June

13  5, 2008, regarding Residential Services Licensure?

14  Do you see that?

15     A     Yes.  I sure do.

16     Q     And then if you could go to what is marked

17  as Exhibit 5?

18     A     Uh-huh.

19     Q     You'll see that that letter was dated May

20  23rd, 2008; right?

21     A     Yes.

22     Q     Just to be clear, Exhibit 5 is the letter

73

1    referenced in the first line of Exhibit 2; right?

2         A    Correct.

3         Q    If you go to Exhibit 6, you'll see that

4    the date is June 11; right?

5         A    Yes.

6         Q    Any idea why that's underlined?

7         A    No.

8         Q    Okay.  Is it possible that that June 11,

9    given that what was Exhibit 5 we know was postmarked

10   on June 5th, 2008; right?

11        A    Right.

12        Q    Could that e-mail be a reference to

13   Exhibit 5?

14             MR. BECKER:  Objection.  Anything is

15   possible.  You can answer the question.

16   BY MR. DE GRAVELLES:

17        Q    Do you know?

18        A    I don't know.

19        Q    Okay.  So it doesn't jog your memory?

20        A    No.

21        Q    All right.  Were you with Feldman's in

22   December of 2008?

### Capital Reporting Company
### Adams, Amy M. 01-21-2010

74

1    A    In 2008?

2    Q    December 2008.  Yeah.

3    A    I left -- I don't think so.  I left -- no.

4  I wasn't.  I wasn't.

5    Q    I hand you what's been premarked as Adams

6  Exhibit 7.  I'll ask you if you recognize that?

7    A    This is not familiar.  It doesn't mean I

8  didn't see it.

9    Q    As you sit here today, is it your

10  understanding that Feldman's requires an RSA?

11        MR. BECKER:  For what purpose?

12        MR. DE GRAVELLES:  Any purpose.

13  BY MR. DE GRAVELLES:

14    Q    Does Feldman's require an RSA?

15    A    For the State of Maryland it seems that

16  way.

17        MR. DE GRAVELLES:  Let's take a break.  We

18  may be very close to finished.

19        MR. BECKER:  Okay.

20              -  -  -

21        (Recessed at 11:16 a.m.)

22        (Reconvened at 11:28 a.m.)

**Feldman's Medical Center Pharmacy, Inc.**
**11055 Little Patuxent Parkway**
**Columbia, MD  21044**
**Phone:  410-964-8444**
**Fax:  410-740-1377**
**www.feldmanspharmacies.com**

May 12, 2008

<u>Via Federal Express Delivery</u>

Mrs. Barbara Fagan
Program Manager
Office of Health Care Quality
55 Wade Avenue, BB Building
Catonsville, MD  21228

To Whom It May Concern:

Feldman's Medical Center Pharmacy, Inc. is a retail pharmacy which carries a limited selection of durable medical equipment and supplies.  We have a delivery vehicle (small SUV) which we use <u>occasionally</u> to deliver DME such as wheelchairs, walkers, canes, diabetic supplies, etc.  Most persons receiving delivery of these items are self-pay.  We are asking for clarification as to whether or not it is necessary for Feldman's Medical Center Pharmacy, Inc. to hold an RSA license.

 In the year 2007, we submitted ten claims to Maryland Medical Assistance for patients receiving DME.  Of those ten claims, eight were for diabetic testing supplies, one was for ostomy bags, and the other was for a cane.  All of these items were picked up in the store.

When we make deliveries, our driver will either bring the medical equipment or supplies to the patient's door where the item will be received, or if applicable, will bring the item into the home.  If necessary, the driver will explain how to use an item (i.e. wheelchair – braking mechanism, removable footrests, folding for storage, etc.).

Equipment and supplies will be covered under the manufacturer's warranty.  Warranty information will be given to the patient upon delivery of the equipment or supply.

Given this information, please advise us as to whether or not we should obtain an RSA license.  Please contact me with any questions.

Thank you for your assistance in this matter.

Sincerely,

Amy Adams
Store Manager

AA/scm

**Adams Exhibit 1**

M 00656

**FELDMAN'S MEDICAL CENTER PHARMACY, INC.**
11055 Little Patuxent Parkway
Columbia, MD 21044
Phone: 410-964-8444
Fax: 410-740-1377
www.feldmanspharmacies.com

June 13, 2008

Via Federal Express Overnight Delivery

Ms. Edna M. Radu
Medical Care Program Specialist
Division of Community Support Services
Office of Health Care Quality
Spring Grove Center, Bland Bryant Building
55 Wade Avenue
Catonsville, MD 21228

RE:    Residential Services Licensure – DME/DMS Provider No. 403328100

Dear Ms. Radu:

Feldman's Medical Center Pharmacy, Inc. received correspondence from you dated May 23, 2008, and postmarked June 5, 2008, regarding Residential Services Licensure.

Feldman's Medical Center Pharmacy, Inc. recently notified you of a change of ownership. Along with the notification we completed a "Maryland Medical Assistance DMS/DME and Oxygen Residential Services Agency Survey Form", and we also wrote a note indicating that we are currently working on obtaining our Residential Services Agency License. We indicated that we do not provide any of the following medical equipment and services to Medical Assistance recipients in their residence:

> Delivery, installation, instruction, maintenance, replacement of oxygen and oxygen delivery systems, ventilators, respiratory disease management devices, electronic and computer-driven wheelchairs and seating systems, apnea monitors, transcutaneous electrical/nerve stimulators, low air loss cutaneous pressure management devices, sequential compression devices, neonatal home phototherapy devices, feeding pumps and electrically powered hospital beds.

Currently, Medicaid recipients pick up any supplies or equipment in our store.

As mentioned above, we are in the process of submitting the Residential Services Agency License Application and completing the Residential Services Agency requirements. We anticipate that due to the volume of Residential Services Agency License Applications, that we will be notified within the next several months.

We appreciate your prompt reconsideration of this matter so that our Maryland Medicaid Provider number will not be terminated or suspended.

Please feel free to contact me with any questions.

Yours truly,

*Amy Adamson*

Amy Adams

AA/scm
Enclosures

**Adams Exhibit 2**

# FELDMAN'S MEDICAL CENTER PHARMACY, INC.

July 30, 2008

Maryland Department of Health and Mental Hygiene
Office of Health care Quality
Spring Grove Hospital Center, Bland Bryant Building
55 Wade Avenue
Baltimore, Maryland  21228-4663

Attn:   Ms. Barbara Fagan, Program Manager, Ambulatory Care

Dear Ms. Fagan:

As requested, we have enclosed the following required documentation and fee for processing our RSA Application for Feldman's Medical Center Pharmacy, Inc.:

- Fully executed Application to operate a Residential Service Agency in the State of Maryland
- Check No. 4979 for $500.00, non-refundable processing fee
- State Affidavit (signed & dated)
- Policies & Procedures:
    1. List of licensed & non-licensed personnel
    2. Resume of the Administrator
    3. Copies of licensure/certification for all personnel (professionals & paraprofessionals)
    4. Job Descriptions for all positions
    5. Complaint Resolution & sample Complaint Intake Log
    6. Sample personnel file with skills assessment & demonstration
    7. Scope of Services
    8. Client/Patient Acceptance Criteria
    9. Patient Admission/Information Packet
    10. Emergency Procedures
    11. Organizational Chart
    12. Client/Patient Record Maintenance & sample record
    13. Billing & sample invoice
    14. Continuing Quality Improvement Plan
    15. Infection Control & sample Infection Control Log
    16. Health requirements for employees
    17. Maintenance of equipment & sample Maintenance Log

Please be advised that according to Ms. Jeffers at the Maryland State Board of Pharmacy, there no current requirements for employee vaccinations, such as Hepatitis A and B; it is solely at the employer's discretion.

Thank you for your time and consideration in the processing of our RSA Application.  If you have any questions please do not hesitate to contact me.

Sincerely,

Steven A. Schneider
President

11055 Little Patuxent Parkway
Columbia, MD  21044
Phone:  410-964-8444  Fax: 410-740-1377

www.feldmanspharmacies.com

**Adams Exhibit 3**

M 00666



STATE OF MARYLAND

Office of Health Services
Medical Care Programs

## Maryland Department of Health and Mental Hygiene
201 W. Preston Street • Baltimore, Maryland 21201

Martin O'Malley, Governor – Anthony G. Brown, Lt. Governor – John M. Colmers, Secretary

May 23, 2008

The Office of Health Services, Division of Community Support is responsible for ensuring that Maryland Medicaid (MA) Providers rendering the following durable medical equipment and oxygen services to Medicaid beneficiaries in their residence maintain Residential Service licensure.

- Delivery, installation, instruction, maintenance, replacement of oxygen and oxygen delivery systems, ventilators, respiratory disease management devices, electronic and computer-driven wheelchairs and seating systems, apnea monitors, transcutaneous electrical/nerve stimulators, low air loss cutaneous pressure management devices, sequential compression devices, neonatal home phototherapy devices, feeding pumps and electrically powered hospital beds.

We have been informed by the DHMH Provider Enrollment Unit that your organization provides these services. In order to ensure program integrity pursuant to COMAR 10.09.12.02, please fax a copy of your RSA license to Edna Radu at 410-333-5052. Failure to forward a copy of your Residential Services Agency License within 10 days of the date of this letter will result in termination of your Maryland Medicaid Provider Number.

**Adams Exhibit 5**

CONFIDENTIAL
ATTORNEYS EYES ONLY

M 01741

Page 2

If your provider number is terminated, you must reapply in order to be reinstated as a Maryland Medicaid Provider.  To obtain information concerning Residential Service Agency licensure, call 410-402-8000 or write:

**Office of Health Care Quality**
**Spring Grove Center, Bland Bryant Building**
**55 Wade Avenue**
**Catonsville, MD  21228.**

Should you have further questions pertaining to this correspondence, you may contact this me at (410) 767-1739.  Thank you for servicing Maryland Medicaid beneficiaries.

Sincerely,

Edna M. Radu

Medical Care Program Specialist
Division of Community Support Services

CONFIDENTIAL
ATTORNEYS EYES ONLY